In the Matter of COLONIAL REALTY COMPANY, Jonathan Googel, Benjamin Sisti, Consolidated Debtors.

Bankruptcy No. 2–90–01980.

United States Bankruptcy Court, D. Connecticut.

Dec. 24, 1991.

John R. Mallin, Annamarie DiBartolo, Cynthia A. Jaworski, Corcoran, Mallin & Aresco, P.C., Hartford, Conn., and D. Michael Tranum, and Mark M. Sadlon, East Hartford, Conn., for Federal Deposit Ins. Corp.

Hal M. Hirsch, Gainsburg & Hirsch, Purchase, N.Y., for trustee in bankruptcy-movant.

Honor S. Heath, Attorney/Advisor, U.S. Trustee's Office, New Haven, Conn.

Michael P. Richman, Mayer, Brown & Platt, New York City, for Merrill Lynch Private Resources, creditor.

Barry S. Feigenbaum, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, Conn., for Citybank, N.A., creditor.

Stuart Bear, Zeldes, Needle & Cooper, Bridgeport, Conn., for Benjamin Sisti, Helen L. Sisti, Kevin Sisti, Panda Angel, Inc., Martin Marina Corp., Southern Ties, Inc. and Cohen, Cohn & Silverman, P.A.

## MEMORANDUM OF DECISION RE: MOTION OF TRUSTEE TO ENFORCE "SECTION 362 STAY AGAINST THE FDIC"

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

On December 16, 1991, following a duly-noticed hearing, this court entered an oral ruling in which the court concluded that the Federal Deposit Insurance Corporation (FDIC) was in violation of the automatic stay provisions of 11 U.S.C. § 362(a) when it commenced and continued to prosecute a fraudulent conveyance action in Florida to recover from alleged transferees monies received from Benjamin Sisti, one of the debtors in this consolidated chapter 7 case. The court also stated it would enter a written order the following day [1] to be supplemented, as promptly as circumstances would permit, with a memorandum of decision. The chapter 7 trustee had requested the prompt rulings in light of indicated continued FDIC prosecution of the Florida action on December 17, 1991.

### II.

This chapter 7 case is a substantive consolidation of the three individual bankruptcy estates of Colonial Realty Company, a Connecticut general partnership, and Jonathan Googel and Benjamin Sisti, the two general partners of Colonial Realty Company.[2] These cases were commenced simultaneously by involuntary petitions filed on September 14, 1990. The court entered an order consolidating the cases on August 9, 1991, and Hal M. Hirsch, Esq. became permanent trustee for the consolidated estates on October 19, 1991. Colonial Realty Company had been involved in the formation and syndication of approximately 60 real estate limited partnerships throughout the United States. These cases have become one of the most widely-publicized bankruptcies in recent Connecticut history due to significant losses sustained by thousands of investors. The FDIC, after commencement of the cases, either by order of the Connecticut Superior Court or the order of the Comptroller of Currency, became the receiver of five former Connecticut state or national banks—Citytrust, The Landmark Bank, Community National Bank, Suffield Bank and the New Connecticut Bank and Trust Company, N.A. These banks had dealings with Colonial Realty Company ventures and the general partners, and had filed proofs of claim in the consolidated cases. The FDIC, upon assuming its role as receiver, has been an active participant during the progress of the case. The claims filed by all creditors total billions of dollars.

The trustee, as part of his duties, has been investigating the complicated financial dealings of the debtors, including negotiating with the FDIC to examine the financial records of the five banks in receivership to secure bank records as they apply to the debtors and their transactions. The trustee claims to have issued over 400 subpoenas to various parties during this investigation.

On December 2, 1991, the FDIC, as receiver of the five banks, commenced an action in the United States District Court for the Southern District of Florida seeking to recover alleged fraudulent transfers totaling approximately $20,000,000 made by Benjamin Sisti to his wife, his son, and several other entities (the Florida action). The complaint alleges Benjamin Sisti's obligations to the five banks total $66,169,921 arising primarily out of his status as guarantor of bank loans made over a period of five years to various Connecticut limited

---

1. The written order entered on December 17, 1991 is attached to this memorandum as Exhibit A.

2. The factual statements contained in this section come from the papers filed in the matter and the general background of the case known to the court and the parties.

partnerships. In the instance of The Landmark Bank, the FDIC alleges Benjamin Sisti was "a former insider", with an unpaid obligation of $3,397,396. The FDIC's complaint names neither Benjamin Sisti nor the trustee as party-defendants, and the trustee first learned of the Florida action on December 13, 1991. This court, on December 16, 1991, commenced a hearing on the trustee's "Motion On Short Notice Pursuant To Bankruptcy Rule 9006(c) For Order Enforcing The Section 362 Stay Against The FDIC." [3] The FDIC, on the same day, pursuant to 28 U.S.C. § 157(d) [4], filed with the United States District Court for the District of Connecticut a motion to withdraw to the District Court the contested matter commenced by the trustee's motion. The District Court (Honorable José A. Cabranes), after hearing, denied the motion, and the hearing before the bankruptcy court continued.[5] The trustee argued that fraudulent conveyance actions asserted in the Florida action are property of the debtors' estate over which the bankruptcy court has exclusive jurisdiction and that the statutory automatic stay provisions apply to the FDIC.

In contending that it is not subject to the automatic stay, the FDIC relies upon the following provisions contained in § 2528 of the Comprehensive Crime Control Act of 1990, 104 Stat. 4789 (1990), 12 U.S.C. § 1821(d)(17) (West Supp.1991).

(17) Fraudulent transfers

(A) In general

The Corporation, as conservator or receiver for any insured depository institution, and any conservator appointed by the Comptroller of the Currency or the Director of the Office of Thrift Supervision may avoid a transfer of any interest of an institution-affiliated party, or any person who the Corporation or conservator determines is a debtor of the institution, in property, or any obligation incurred by such party or person, that was made within 5 years of the date on which the Corporation or conservator was appointed conservator or receiver if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution, the Corporation or other conservator, or any other appropriate Federal banking agency.

(B) Right of recovery

To the extent a transfer is avoided under subparagraph (A), the Corporation or any conservator described in such subparagraph may recover, for the benefit of the insured depository institution, the property transferred, or, if a court so orders, the value of such property (at the time of such transfer) from—

(i) the initial transferee of such transfer or the institution-affiliated party or person for whose benefit such transfer was made; or

---

**3.** 11 U.S.C. § 362 states:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

.     .     .     .     .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
. . . .

**4.** *28 U.S.C. § 157. Procedures.*

.     .     .     .     .

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

**5.** This court treated the trustee's motion as one filed pursuant to 11 U.S.C. § 362(h). "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *See Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir.1986) (proceeding under § 362(h) a core proceeding).

(ii) any immediate or mediate transferee of such initial transferee.

.　　.　　.　　.　　.

(D) Rights under this paragraph

The rights under this paragraph of the Corporation and any conservator described in subparagraph (A) shall be superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11.

The FDIC further contends that the bankruptcy court lacks jurisdiction to make any determination because of the limitations in 12 U.S.C. § 1821(d)(13)(D) and § 1821(j).[6]

(d) Powers and duties of Corporation as conservator or receiver

.　　.　　.　　.　　.

(13) Additional rights and duties

.　　.　　.　　.　　.

(D) Limitation on judicial review

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any action or omission or such institution or the Corporation as receiver.

.　　.　　.　　.　　.

(j) Limitation on court action

Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as conservator or receiver.

In alternative arguments, the trustee (1) denies that these statutes modify the requirements of the automatic stay, (2) contends that the rights of the debtors' estates were in place prior to the enactment or effective date of 12 U.S.C. § 1821(d)(17) and its provisions do not have retroactive effect; and (3) that if applicable to this estate, the statute would be in violation of the Fifth Amendment to the United States Constitution. As the court sustains the trustee's position on the applicability of the automatic stay, his remaining contentions are not addressed.

All appearing parties, except the FDIC, support the trustee's position. At the hearing, the trustee and Stuart Bear, Esq., attorney for all of the defendants in the Florida action, submitted for court approval a "Stipulation" by those defendants which states, *inter alia*, "Defendants have a desire to cooperate with the trustee in the recovery of assets" and they will not transfer any assets without a three-day "prior written notice by hand delivery to the Bankruptcy Court, to the United States Trustee and to the Trustee."

### III.

#### A.

■ The bankruptcy court upon reference of Title 11 cases by the district court pursuant to 28 U.S.C. § 157(a), has "exclusive jurisdiction of all the property wherever located of the debtor, as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(d). It is well settled that fraudulent conveyance actions based upon prepetition transfers by a debtor are property of the estate; that the estate trustee has exclusive authority to maintain such actions, and that the automatic stay bars all other parties from pursuing such actions, unless relief from the stay is sought in and granted by the bankruptcy court. *See, e.g., In re Sherk*, 918

---

**6.** The FDIC contentions are being set forth in somewhat more detail than actually presented at the hearing. Two days after the hearing the FDIC filed a "Petition for A Writ of Mandamus And/Or A Writ of Prohibition To The United States Bankruptcy Judge Robert L. Krechevsky" in the District Court contending the ruling of the bankruptcy court was "extraordinary". The statutory provisions relied upon by the FDIC are more fully set forth therein and they have been incorporated in this Memorandum.

F.2d 1170, 1176–1177 (5th Cir.1990); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983).

The FDIC apparently does not dispute any of the foregoing, but contends that the cited Title 12 provisions remove the FDIC from the effect of these basic bankruptcy doctrines.[7] While 12 U.S.C. § 1821(d)(17)(D) may grant the FDIC a "right" "superior" to that of the trustee in certain fraudulent conveyance actions, there is no reason to assume, as the FDIC does, that the automatic stay does not apply. Bankruptcy law recognizes that numerous parties may have rights superior to a bankruptcy trustee. The paradigmatic example is the secured creditor. In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court construed federal statutes that authorized the Internal Revenue Service (IRS) to seize and sell taxpayer's property to satisfy tax claims. The Court held where the IRS prepetition had seized property from a debtor who, prior to the IRS sale, filed a bankruptcy petition, the automatic stay barred the IRS from proceeding with the sale. The Court concluded the Bankruptcy Code required the IRS "to seek protection of its interest according to the congressionally-established bankruptcy procedure, rather than by withholding the seized property from the [debtor]...." *Id.* at 212, 103 S.Ct. at 2317. Under this doctrine, the word "superior" in § 1821(d)(17)(D) means "prior in right."

The automatic stay provisions do not constitute a "right" of a trustee, but a congressionally-mandated restraint that springs into existence upon the filing of a bankruptcy case. "The stay is procedural, remedial, not substantive." *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 1012, 1016 (Bankr.N.D.Ga.1981), *vacated as moot by stipulation*, 687 F.2d 344 (11th Cir.1982). Being subject to the stay in no way limits the FDIC in its superior right to the defined fraudulent conveyance action. "Paragraph [17] D gives the Federal Deposit Insurance Corporation superior rights to the trustee or any other party (other than a Federal agency) in bankruptcy *with respect to the property transferred.*" (Emphasis added). H.Rep. No. 101–681(I), 101st Cong., 2nd Sess. 181 (1990), *reprinted in*, 1990 U.S.Code Cong. & Admin.News 6472, 6587. No holding was cited by the FDIC, and none has been located, which support the exception which the FDIC claims for itself here. *In re Adana Mortgage Bankers, Inc., supra,* held that a National Housing Act provision that "no Federal law ... shall preclude or limit the exercise" of the General National Mortgage Association's right to "enforce" contracts, did not exempt the Association from the automatic stay. The court noted "[t]hus Congress has uniformly withheld the power to parties in interest under Title 11 U.S.C. to determine unilaterally whether it is subject to the jurisdiction and stay of the court." *Id.* at 1022 n. 16. *Cf. Allied Grocers Co-operative, Inc. v. United Fruit and Produce Co., Inc. (In re United Fruit and Produce Co., Inc.),* 86 B.R. 14, 16 (Bankr.D.Conn.1988) (bankruptcy court retains control over debtor's receivables notwithstanding federal law (PACA) which provides that such receivables impressed with trust for benefit of unpaid growers). *Cf. also, In re Southland + Keystone,* 132 B.R. 632, 638–639 (9th Cir.BAP 1991).

There is an additional basis for holding that the FDIC remains subject to the automatic stay. Section 2522 of the Crime Control Act of 1990 amended in careful detail a number of Bankruptcy Code provisions.[8]

---

7. Significantly, the FDIC does not contend that it is entitled to, or comes within, any of the 13 statutory exceptions to the automatic stay delineated in 11 U.S.C. § 362(b). *See Board of Governors of the Federal Reserve System v. MCorp. Financial, Inc.,* — U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (where Federal Reserve Board engaged in "ongoing, nonfinal, administrative proceeding" pursuant to § 362(b)(4) [exception from stay for governmental unit's police or regulat- ing power], there is no impairment of bankruptcy court's exclusive jurisdiction over property of the estate).

8. Congress amended § 101 to add definitions derived from Title 12. Section 365, as amended, deems that commitments to maintain capital of an insured depository institution have been assumed by the trustee and that any existing defaults shall be immediately cured. A new

If Congress had intended to amend the § 362(b) exceptions to include the FDIC, it would have included such amendment among the many that it made.

At heart, the FDIC's argument is that it should be exempt from the automatic stay so that it may, without prior bankruptcy court determination, decide that any action it wishes to bring to recover fraudulent conveyances complies with § 1821(d)(17). Section 1821(d)(17)(A) excludes the most commonly brought fraudulent conveyance actions. The FDIC is authorized to institute only those actions in which the FDIC can establish that the debtor-transferor had a specific intent to hinder, delay or defraud an identified bank. Bankruptcy trustees normally bring fraudulent conveyance actions under the simpler fraudulent conveyance doctrine of establishing that the debtor-transferor was insolvent and "received less than a reasonably equivalent value in exchange." *See* 11 U.S.C. § 548(a)(2). Accordingly, there is no need to meet the stricter burden of proof of establishing fraudulent intent.

A relief from stay hearing would allow the trustee to inquire whether the fraudulent conveyance action which the FDIC wishes to commence fits the statutory definition. The FDIC should not unilaterally make that decision for itself. Furthermore, the FDIC concedes § 1821(d)(17)(A) requires that the FDIC bring the fraudulent conveyance action only for the benefit of the particular bank involved and only to the extent of satisfying the debtor's obligation to that bank. The trustee, during the relief from stay hearing, may inquire as to the extent of the debt to the insured bank, and whether other alternatives are available to the FDIC to satisfy such obligation without depriving the estate's creditors of their right to share in this estate property. The doctrine of marshaling of assets may be applicable. *See Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963) ("[t]he equitable doctrine of marshalling rests upon the principle that a creditor having two funds to satisfy his debt may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds."); *In re Jack Green's Fashions For Men–Big & Tall, Inc.*, 597 F.2d 130, 133 (8th Cir.1979) ("Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases.").

It is obvious that it is not necessary, indeed it would be impossible, to anticipate what issues a trustee might raise during a relief from stay hearing. The overarching point is that the forum that Congress provided for the trustee and all parties, without exception, making a claim to estate property is the bankruptcy court. *Cf. Resolution Trust Corporation v. Shehu (In re Shehu)*, 128 B.R. 26 (Bankr.D.Conn. 1991), *appeal docketed,* (in hearing to secure relief from stay for creditor to bring foreclosure action, trustee or debtor may raise all defenses going to purpose of defeating requested relief).

Since the FDIC claims it need not make the trustee a party to any fraudulent conveyance action, or even notify the trustee that such litigation was started, it would impose an intolerable burden upon bankruptcy trustees to develop a system to uncover FDIC actions around the country and seek to intervene (as suggested by the FDIC) if a trustee believed the FDIC should be prevented from continuing its action. As aptly described by the attorney for the United States Trustee's Office, such a requirement could create chaos in the bankruptcy system. *See Fidelity Mortgage Investors v. Camelia Builders, Inc.,*

---

priority claim has been created under § 507(a) for commitments made by the debtor to the FDIC to maintain the capital of an insured depository institution. Section 522(c) has been amended to allow the FDIC to retain nondischargeability claims against exempt property. Section 523 has been amended to except from discharge (1) claims from any act of fraud or defalcation while acting in a fiduciary capacity for any depository institution or insured credit union, and (2) claims for malicious or reckless failure to fulfill any commitment by the debtor to an insured depository institution to maintain capital. Section 523(e) has been added to define fiduciary capacity, and § 523(c)(2) has been added to except the FDIC from the 60–day bar date for filing objections to discharge.

550 F.2d 47, 55 (2nd Cir.1976), *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), *rehearing denied* 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977) (construing a predecessor version of § 362(a)) (the purpose of a bankruptcy stay is to "prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.").

In sum, I hold that § 1821(d)(17) does not abrogate the automatic stay of § 362(a) for FDIC fraudulent conveyance rights. No legislative history exists to suggest that Congress intended to permit the FDIC to avoid the provisions of the automatic stay; Congress amended other sections of the Bankruptcy Code and did not amend § 362(b); any statutory construction to limit the effect of § 362(a) should not be favored.

### B.

■ The arguments of the FDIC that this court lacks jurisdiction to enter the orders it has are meritless.

The provisions of 12 U.S.C. § 1821(d)(13)(D) cited by the FDIC, upon fuller examination, refer solely to the claims procedure of § 1821(d)(3)–(13). Under this procedure, after notice from the FDIC as receiver for a failed bank, parties are required to file claims, and the FDIC has 180 days to make a determination before the claimant is free to file an action in an appropriate district court. To assert that the trustee had to make his complaint first to the FDIC before filing the instant motion in the bankruptcy court is simply implausible. *Cf. Rosa v. Resolution Trust Co.,* 938 F.2d 383, 395 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116

L.Ed.2d 608 (1991) (claim of beneficiaries of ERISA pension plan trust for injunction prohibiting retroactive termination of plan not part of claims procedure under § 1821(d)(13)); *Parker North American v. Resolution Trust Corporation (In re Parker North American),* 131 B.R. 452, 456 (Bankr.C.D.Cal.1991) (trustee who seeks money claim from RTC must wait 180 days before bringing action).

■ The second statute relied upon by the FDIC, 12 U.S.C. § 1821(j), provides that "no court may take any action ... to restrain or affect the exercise of powers or functions of the [FDIC] as conservator or receiver." As an initial matter, it must be noted that at the December 16, 1991 hearing, the court's first ruling was to hold that, construing the trustee's motion as one under § 362(h), the FDIC's Florida action violated the automatic stay provisions of § 362(a). The court then stated that the trustee's request for injunctive relief did not meet the requirement of Fed. R.Bankr.P. 7001(7), which mandates the use of an adversary proceeding rather than motion practice to obtain an injunction. At this point, D. Michael Tranum, Esq., the managing attorney of the FDIC's Hartford Consolidated Office, stated that the FDIC would not consider itself bound by the court's determination as to the applicability of the automatic stay even while seeking its review. After a further exchange between the court and Tranum, the court determined that the totality of the circumstances supported the court's use of 11 U.S.C. § 105(a)[9] to enter thereunder the orders set out in Exhibit A.

■ On a different level of analysis, § 1821(j) does not apply to the court's ruling on the applicability of § 362(h). The automatic stay imposed by § 362(a) is one mandated by a congressional act, not a restraint imposed by a court. The automatic stay becomes effective automatically

---

**9.** *11 U.S.C. § 105. Power of court.*
(a) the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

and immediately upon the filing of a bankruptcy petition. Actions, whether taken knowingly or not, which violate the stay are void and of no effect unless, perhaps, the stay is thereafter annulled by a court. *See In re Smith*, 876 F.2d 524, 525–526 (6th Cir.1989). If, as determined here, the automatic stay was in effect on December 2, 1991, all actions taken in the Florida action are void, regardless of whether the court entered separate injunctive orders to avoid dissipation of estate assets and curtail abuse of process.

### IV.

The ruling which the court entered orally on December 16, 1991, and issued in writing on December 17, 1991, is hereby confirmed by this Memorandum of Decision.

### EXHIBIT A

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF CONNECTICUT

In The Matter Of:

COLONIAL REALTY COMPANY,

JONATHAN GOOGEL,

BENJAMIN SISTI,

Consolidated Debtors

In Bankruptcy

Case No. 2–90–01980

ORDER DETERMINING APPLICATION OF AUTOMATIC STAY AND RESTRAINING FDIC FROM CONTINUING FRAUDULENT CONVEYANCE ACTION IN FLORIDA AND CONTINUING AND COMMENCING ALL ACTIONS VIOLATION OF THE AUTOMATIC STAY

A duly-noticed hearing having come on before this Court on December 16, 1991 by motion of Hal M. Hirsch, Operating Trustee of Colonial Realty Company, Jonathan Googel and Benjamin Sisti, consolidated debtors (the "Trustee"), for an Order determining the application of the automatic stay as against the Federal Deposit Insurance Corporation (the "FDIC") and barring the FDIC from continuing an action for the recovery of fraudulent conveyances, commenced December 2, 1991 in the United States District Court for the Southern District of Florida,

And the present proceeding, pursuant to, *inter alia*, 11 U.S.C. § 362(h), being a core proceeding under 28 U.S.C. § 157, and Hon. José A. Cabranes, District Judge for the District of Connecticut, having denied, after hearing, a motion of the FDIC to withdraw this proceeding,

And it appearing that the proceeds of the fraudulent conveyance action sought to be recovered by the FDIC are property of the estate pursuant to § 541 of the Bankruptcy Code, and that provisions of the automatic stay of 11 U.S.C. § 362 apply to such property, and that the FDIC commenced an action for the recovery of fraudulent conveyances, allegedly made by the debtor, Benjamin Sisti, in the United States District Court for the Southern District of Florida on December 2, 1991 (the "Florida Action"), and that the Trustee first obtained notice of the action by the FDIC before the Florida District Court after the close of business on December 13, 1991, and notice of the Trustee's present motion having been provided to Corcoran, Mallin & Aresco, attorneys to the FDIC before this Court, the Assistant United States Trustee, and others as of record appears, on or before December 15, 1991, and this court having heard the Trustee, by his attorneys, Gainsburg & Hirsch, Hal M. Hirsch of counsel, the Assistant United States Trustee, by Honor S. Heath, Esq., the FDIC by John Mallin, Esq., Annamarie DiBartolo, Esq., Cynthia Jaworski, Esq., and D. Michael Tranum, Esq.; Citibank by Barry S. Feigenbaum, Esq., Merrill Lynch by Michael Richman, Esq.; Helene L. Sisti, Kevin Sisti, Panda Angel, Inc., Martin Marina Corporation, Southern Ties, Inc., and Cohen, Cohn & Silverman, P.A., by Stuart Bear, Esq., and good and sufficient cause having been established, it is

DETERMINED that the automatic stay pursuant to § 362 of the Bankruptcy Code is in full force and effect as to the property of the estate (the fraudulent conveyance actions in which Benjamin Sisti is the transferor), and it is

FURTHER DETERMINED that the FDIC is fully bound by the automatic stay imposed by § 362 of the Bankruptcy Code, and it is

FURTHER DETERMINED that the actions of the FDIC in commencing the action in the United States District Court for the Southern District of Florida, Case No. 91–8766, styled *FDIC, et al. v. Helene L. Sisti, et al.* (the "Florida Action"), is violative of the automatic stay provisions of the Bankruptcy Code at § 362,

And this court having stated its conclusions of law upon the record (with a written opinion to be hereafter rendered), and the FDIC, through its attorneys, having stated in open court that unless specifically enjoined by this court, the FDIC will not consider itself bound by this court's ruling regardless of any stay or review it may seek of such ruling as to the applicability of the automatic stay, it is, pursuant to 11 U.S.C. § 105,

ORDERED that the FDIC be, and the same hereby is, enjoined from continuing the Florida Action pending further order of this Court, and it is

FURTHER ORDERED that the FDIC be, and the same hereby is, enjoined from commencing or continuing any action in any forum other than this Court to obtain property of the estate without first complying with the provisions of 11 U.S.C. § 362, and it is

FURTHER ORDERED that no other sanctions be assessed at this time.

Dated at Hartford, Connecticut, this 17th day of December, 1991.

/s/   Robert L. Krechevsky
    Robert L. Krechevsky
    Chief Bankruptcy Judge