**In re ORMOND BEACH ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 2–94–01524.**

United States Bankruptcy Court, D. Connecticut.

July 11, 1995.

Ira H. Goldman, Jeffrey R. Hellman and Dana M. Campbell, Shipman & Goodwin, Hartford, CT, for debtor.

Robert A. White and Robert E. Kaelin, Murtha, Cullina, Richter and Pinney, Hartford, CT, for Citation Mortg. Ltd., Citation Mortg. Corp. and Terrence Russell, respondents.

David M.S. Shaiken, Shaiken & McDade, P.C., Hartford, CT, for Volusia County, Fla.

Jon P. Newton, Reid & Reige, P.C., Hartford, CT, for Ormond Beach Management, Inc., LPIMC, Inc., John W. Galston, Eugene H. Rosen and Bruce Weinstein.

Gary M. Becker, Day, Berry & Howard, Hartford, CT, for Bank One, Texas, N.A.

### RULING ON MOTION FOR SANCTIONS FOR VIOLATION OF AUTOMATIC STAY

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The matter before the court is the debtor's motion for sanctions against Citation Mortgage Ltd., Citation Mortgage Corp. (collectively "Citation"), and their attorney, Terrence Russell (Russell) for "violation of the automatic stay and this court's December 22, 1994, Order." Debtor's Motion at 1. Citation and Russell deny any responsibility for the complained of violation, as hereinafter detailed.

### II.

Ormond Beach Associates Limited Partnership (the debtor) on September 30, 1986 acquired and subsequently operated a retirement center located in Ormond Beach, Florida (the "center"). The debtor also acquired and operated a nursing home located next to the center. The center was then subject to a first mortgage, which on January 9, 1992, was purchased by Citation from the Resolution Trust Corporation (RTC). The RTC had received the mortgage from the original mortgagee, Freedom Savings & Loan Association.

Citation, on June 26, 1992, started a mortgage foreclosure action in the Circuit Court for the Seventh Judicial Circuit in and for Volusia County, Florida (the "state court") naming the debtor, its present corporate general partner, LPIMC, Inc., and several former general partners, Eugene Rosen (Rosen), Bruce Weinstein (Weinstein) and John Galston (Galston) as defendants. A later amended complaint asserted various additional tort claims against all defendants, and sought to add 165 of the debtor's limited partners as party defendants. Citation, claiming under a written assignment of the center's rents and prior actions taken by the RTC, made demand upon the debtor for all rents received by the debtor at the center after July 1989.

The state court, on January 6, 1993, entered a judgment of foreclosure and Citation thereupon took title to the center. During the foreclosure action, Citation, on October 19, 1992, filed a motion to require the debtor to deposit the demanded rents in the state-court register. The state court, on July 16, 1992, granted the motion, and also ordered the debtor to submit a written accounting within 20 days detailing the receipt and use of the center's net operating income. Citation's Exhibit 3 (the "deposit order"). The debtor neither deposited the rents nor filed the accounting, and following a hearing on August 26, 1993, the state court found "the defendants" in contempt and imposed "a fine in the amount of $10,000.00 per day, commencing on the date of this order, for each and every day that the Defendants fail to purge themselves of the acts of contempt described in this order." Citation's Exhibit 6 (the "contempt order").

The debtor had appealed the deposit order, and the contempt-order sanctions were stayed from September 3, 1993 through March 3, 1994, when the Florida Fifth Circuit Court of Appeals affirmed the deposit order. The debtor, on March 7, 1994, filed an accounting of the rents with the state court. At a hearing held on April 25, 1994, the state court concluded that the accounting was insufficient, and that the defendants remained in violation of the deposit order. The state court continued the hearing to April 28, 1994 to determine further sanctions.

The debtor filed for relief under Chapter 11 in the bankruptcy court on April 26, 1994, and the state court hearing scheduled for April 28, 1994 did not go forward. The

debtor then removed the state-court proceeding to the bankruptcy court. By order dated June 30, 1994 the bankruptcy court, on Citation's motion, remanded that proceeding to the state court "as to all matters and all parties therein, except as to the Debtor ... and ... any general partner who has indemnification rights against the debtor." The bankruptcy court later authorized the debtor to employ an accounting firm to prepare a revised accounting of the rent received at the center by the debtor after July 1989. This accounting was submitted to the state court on October 24, 1994.

Citation, on December 1, 1994, filed a motion for relief from stay in the bankruptcy court seeking, inter alia, an order to permit the state court to determine the "following specific aspects of the litigation": Citation's entitlement to the rents, the amount of the rents, and whether Citation is entitled to a mortgage deficiency judgment. The motion expressly asserted: "Citation does not seek relief from the stay: (a) to continue contempt proceedings against the Debtor...." Debtor's Exhibit 2. The grounds stated in the motion for the requested relief were comity, the presence of novel state law issues under a "new" Florida statute, judicial economy and the location of records and witnesses in Florida.

The bankruptcy court, on December 15, 1994, held a hearing on Citation's motion at which Russell and Robert A. White, Esq. (White), Citation's Connecticut counsel, appeared. White, during the hearing, made the following representation to the court:

[T]he first thing that we would like to have happen to move this case along is the completion of that rent entitlement hearing, which, under the statute, involves completion of the accounting. The judge is going to deal with the contempt issues as to the general partners. We have said to the court that we are not going to pursue contempt sanctions against the debtor, even though there may not be any jurisdiction for the court to prevent the state court down there from [imposing] a fine for prepetition contempt, certainly nothing further. But we're not going to be pushing it. We will as to the general partners.

Debtor's Exhibit 4, at 99. When the bankruptcy court indicated it was considering granting the motion, White read into the record a suggested order. He repeated that "Citation will not be pursuing contempt against the debtor under the existing orders."

The bankruptcy court, on December 22, 1994, entered an order, jointly submitted by the parties, which, in part, provided:

IT IS FURTHER ORDERED, that the automatic stay is modified to permit Citation to pursue its claims against the Debtor in the State Court Action, including all claims under Fla.Stat. § 697.07 and any appeals thereon except that (1) the Florida state court may not direct that any property of the Debtor be placed in the court registry without further order of this Court; (2) Citation may not collect on any judgment without further order of this Court; and (3) the Florida state court may not commence trial on counts X, XI, XIII and XV of the amended complaint as to the Debtor. By agreement of the parties, any determination as to whether Citation holds a secured claim under the Bankruptcy Code will be determined by the Bankruptcy Court without being bound by any determination of a Florida court against the Debtor whether by res judicata, collateral estoppel or otherwise.

Debtor's Exhibit 5. Citation thereafter proceeded to reactivate the state court action. On January 19, 1995, the state court (Honorable Patrick G. Kennedy) entered an order outlining the matters to be addressed at a two-day trial to commence on February 15, 1995. These matters included:

Continuation of the hearing of April 25, 1994 on the motion for contempt, including consideration of whether the supplemental accounting filed subsequent to that hearing purges the defendants of contempt, and if not, whether sanctions will be imposed....

Debtor's Exhibit 9. This order did not define the term "defendants."

When the hearing started on February 15, 1995, Attorneys J. Lester Kaney (Kaney) and Dana M. Campbell (Campbell) appeared for the debtor, and Russell appeared for Cita-

tion. During Russell's opening statement, Judge Kennedy asked: "Has the stay been unconditionally lifted?" Russell responded: "It has." Campbell objected to Russell's response and advised Judge Kennedy that the "stay has not been lifted. The stay has been modified as to allow effectively a liquidation of the claims in this Court." Russell replied: "I was interrupted, Your Honor. The stay has been unconditionally lifted insofar as the contempt sanctions." Debtor's Exhibit 10–A, at 19. The parties then proceeded to put on evidence concerning the amount of rent to be deposited in the court register.

Following the hearing, Judge Kennedy, on February 28, 1995, wrote a letter to Citation's attorneys requesting that they prepare appropriate orders in accordance with itemized findings and rulings contained in the letter. The letter referred to both a "Defendant" and "Defendants," and included a finding that the $10,000 per day sanction had accrued through the date of the filing of the accounting on October 24, 1994 for a total of 240 days, and that the "outstanding fines for which Defendant is now liable to the County of Volusia is $2,400,000." Debtor's Exhibit 11, ¶ 1. In a subsequent paragraph, the letter referred to a fine of $2,400,000 "for the prior contempt of the Defendants." *Id.*, ¶ 7.

Russell, on March 3, 1995, submitted to Judge Kennedy a proposed order which, in part, stated: "Hence the total outstanding fine for which Ormond Beach, LPIMC, Rosen, Galston and Weinstein are now liable to the County of Volusia is $2,400,000." Debtor's Exhibit 13, ¶ 3. Kaney, on March 6, 1995 responded to Russell's proposed order in a letter to Judge Kennedy stating:

"Finally, with respect to the liability of Ormond Beach Associates for sanctions, this Court lacks jurisdiction to impose or liquidate such sanctions. While the automatic stay was modified for certain limited purposes, the automatic stay remains in full force and effect with respect to the imposition of sanctions against Ormond Beach Associates. Indeed, counsel for Citation expressly represented to the Bankruptcy Court that Citation did not seek modification of the automatic stay or to pursue contempt sanctions against Ormond Beach Associates. The imposition of contempt sanctions against Ormond Beach Associates at this time would thus violate the automatic stay and subject Citation and its counsel to sanctions by the Bankruptcy Court.

Debtor's Exhibit 14.

As these letters circulated among the Florida attorneys and the state court, the Connecticut lawyers (White for Citation, Ira H. Goldman, Esq. (Goldman) for the debtor) were likewise exchanging correspondence. On March 6, 1995, Goldman wrote to White reminding him that in Citation's December 1, 1994 motion seeking modification of the stay, Citation had specifically represented that it did not seek relief from stay to continue contempt proceedings against the debtor, and that White had reiterated as much during the December 15, 1994 hearing on that motion. Goldman asserted that the proposed order Russell had submitted to the state court was a violation of the automatic stay, and asked White to notify Russell to ensure that no order directed against the debtor be entered by the state court. Debtor's Exhibit G.

White responded on March 7, 1995, and, while conceding that Citation had "volunteered" to the bankruptcy court that it would not pursue contempt sanctions against the debtor, White contended that Citation had complied with those representations: "My understanding is that Judge Kennedy, without request by Citation, liquidated the contempt sanction against the debtor," and that "[n]either Citation nor Terry Russell are in contempt of the automatic stay for drafting an order reflecting Judge Kennedy's findings." Debtor's Exhibit H. White stated that Citation would not attempt to tell Judge Kennedy how to deal with prepetition contempt, and that, in any event, Judge Kennedy had instructed the parties "not to communicate with him any further on the order." *Id.*

Judge Kennedy entered an order on March 7, 1995 in which the court found the "defendants" to have been in contempt for 240 days. The order provided: "The total accrued contempt fine of $2,400,000 is hereby liquidated for the prior contempt of the De-

fendants, and it shall be subject to future enforcement proceedings by the County of Volusia in accordance with law." Citation's Objection, Exhibit A, ¶ 7. The state court, on March 23, 1995, denied the debtor's March 20 motion for rehearing on the sanctions. Citation's Objection, Exhibit N. The County of Volusia promptly filed a proof of claim for $2,400,000 in the debtor's estate.

### III.

The debtor, on March 23, 1995, filed in the bankruptcy court the present motion for sanctions against Citation and Russell for violations of the automatic stay and the bankruptcy court's December 22, 1994 order. Citation and Russell filed an objection to the motion on May 5, 1995. Following a May 9, 1995 hearing at which the parties submitted only documentary evidence, the parties filed legal memoranda on the issue of the sanctions, if any, this court should impose against Citation and Russell. The debtor requests that the bankruptcy court impose civil contempt fines in the amount of the damages sustained by the debtor as a result of Citation's and Russell's actions, including legal fees. The debtor further requests that the court revoke that portion of the order granting relief from the automatic stay which permitted the state court to determine Citation's entitlement to a deficiency judgment.

### IV.

■ Pursuant to Bankruptcy Code § 362(a)(1), the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title...." The scope of the automatic stay is extremely broad, and "should apply to almost any type of formal or informal action against the debtor or the property of the estate." 2 *Collier on Bankruptcy* ¶ 362.04, at 362–34 (Lawrence P. King, ed., 15th ed.

1995). Acts violative of the stay are, generally, void and without effect, and if willful, provide a proper basis for contempt sanctions. *Id.* ¶ 362.11, at 362–88 to –89.

■ The authority of a bankruptcy court to impose sanctions for contempt is well established. *See In re Stone,* 166 B.R. 269, 273–74 (Bankr.W.D.Pa.1994). Although Code § 362(h) provides express authority to impose sanctions only where the debtor is an individual, the law in this circuit, and elsewhere, is settled that under Code § 105 and Fed.R.Bankr.P. 9020 "[f]or other debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *In re Chateaugay Corp.,* 920 F.2d 183, 186–87 (2d Cir. 1990); *see In re Pace,* 56 F.3d 1170 (9th Cir.1995).

■ Contempt sanctions are justified for "any deliberate act taken in violation of a stay, which the violator knows to be in existence...." *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1105 (2d Cir.1990). As the *Crysen* court explained, this standard serves a prophylactic purpose, as it "encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potential unnecessary legal expenses in prosecuting stay violations." *Id.*

In the case at bar, as detailed in Section II, *supra,* Citation, in its bankruptcy court moving papers and through counsel at the December 15, 1994 hearing, expressly stated that it was not seeking relief from stay to pursue contempt sanctions against the debtor in the Florida state court proceedings. Yet that is precisely what occurred as a direct result of Citation's and Russell's deliberate actions.[1] Contempt sanctions against Russell and Citation are clearly warranted.

Citation and Russell, in their reply memorandum filed on May 31, 1995, generally seek to defend their actions contending the remarks of debtor's Florida counsel concerning the automatic stay confused the state court

---

1. The court can conceive of no basis for White's comment in his March 7, 1995 letter that "Judge Krechevsky specifically did not want to impose any restrictions on the state court with respect to the contempt issue." Debtor's Exhibit H.

during the February 15 and 16, 1995 hearing. This court finds such argument meritless in light of the facts outlined herein. As noted, Russell was present in the bankruptcy court when White, on December 15, 1994, made his representations to the court. Any possible confusion concerning the limited extent of Citation's motion for relief from stay, and the December 15, 1994 representations to the bankruptcy court, should have been completely dispelled by Kaney's and Goldman's letters of March 6, 1995.

## V.

█ Having determined that the state court order imposing sanctions on the debtor was the result of willful acts of Citation and Russell in violation of the automatic stay, the court further concludes that that contempt order, to the extent it refers to the debtor, is void. *See In re Colonial Realty Co.*, 134 B.R. 1017, 1024 (Bankr.D.Conn.1991) ("Actions, whether taken knowingly or not, which violate the stay are void and of no effect unless, perhaps, the stay is thereafter annulled by a court."); *see also In re Graves*, 33 F.3d 242, 247 (3d Cir.1994) (state court order which violated automatic stay held to have been void when issued).[2]

## VI.

█ The debtor's motion requesting the court to award sanctions against Citation and Russell is granted. The clerk's office will schedule a hearing to determine the amount of monetary sanctions for which Citation and Russell will, jointly and severally, be liable, and to address the question of revoking the bankruptcy court order of December 22, 1994 as to the issue of the deficiency judgment. It is

SO ORDERED.

2. The court has noted the arguments contained in the memorandum submitted by Volusia County, Florida, and finds them unavailing in the circumstances of this proceeding.