In re COLONIAL REALTY COMPANY, Jonathan Googel, and Benjamin Sisti, Consolidated Debtors.

FEDERAL DEPOSIT INSURANCE COR-PORATION, as Receiver for Citytrust, The Landmark Bank, Community National Bank, Suffield Bank, and The New Connecticut Bank & Trust Company, N.A., Plaintiff–Appellant,

v.

Hal M. HIRSCH, as Operating Trustee of Colonial Realty Company, Jonathan Googel, and Benjamin Sisti, Consolidated Debtors, Defendant–Appellee.

No. 1673, Docket 92–5023.

United States Court of Appeals, Second Circuit.

Argued June 8, 1992.

Decided Nov. 20, 1992.

Daniel H. Kurtenbach, Counsel, F.D.I.C., Washington, D.C. (Dorothy L. Nichols, Associate General Counsel, Ann S. Duross, Asst. General Counsel, Richard J. Osterman, Jr., Sr. Counsel, Edward J. O'Meara, Counsel, F.D.I.C., Washington, D.C., John R. Mallin, Sharon L. Aresco, Annamarie DiBartolo, Elia Walsh, Corcoran, Mallin & Aresco P.C., Hartford, Connecticut, of counsel), for plaintiff-appellant.

Hal M. Hirsch, Purchase, N.Y. (Gainsburg & Hirsch, Purchase, N.Y., of counsel), for defendant-appellee.

Before: CARDAMONE, WINTER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This is an appeal from an order of the United States District Court for the District of Connecticut, José A. Cabranes, *Chief Judge*, entered December 31, 1991 that affirmed an order of the United States Bankruptcy Court for the District of Connecticut, Robert L. Krechevsky, *Chief Judge*, entered December 17, 1991. *See In re Colonial Realty Co.*, 134 B.R. 1017 (Bankr.D.Conn.1991) (memorandum of decision supporting bankruptcy court's order).

The bankruptcy court ruled that a lawsuit initiated by the Federal Deposit Insurance Corporation ("FDIC") in the United States District Court for the Southern District of Florida to recover assets alleged to have been fraudulently conveyed by a bankruptcy debtor involved property of the bankruptcy estate, and was accordingly subject to the automatic stay of 11 U.S.C. § 362 (1988). 134 B.R. at 1020–23. Acting pursuant to 11 U.S.C. § 105 (1988), and rejecting the FDIC's claim that 12 U.S.C. § 1821(d)(17)–(19) (Supp. II 1990) and 1821(j) (Supp. I 1989) exempted the FDIC from the operation of § 362, 134 B.R. at 1023–24, the bankruptcy court enjoined the FDIC from continuing the pending Florida lawsuit, or from commencing or continuing litigation in any forum other than the bankruptcy court to obtain property of the bankruptcy estate without first complying with § 362. 134 B.R. at 1024–25.

We affirm the order of the district court.

## Background

### A. *The Parties.*

Jonathan Googel and Benjamin Sisti were the general partners of Colonial Realty Company ("Colonial"), a Connecticut general partnership. Colonial was involved in the formation and syndication of approximately sixty real estate limited partnerships throughout the United States. On September 14, 1990, involuntary bankruptcy petitions were simultaneously filed against Colonial, Googel, and Sisti (collectively the "Debtors"). The bankruptcy cases were consolidated on August 9, 1991,[1] and Hal M. Hirsch was appointed permanent trustee for the consolidated estates (the "Trustee") on October 19, 1991.

Thousands of Colonial investors suffered significant losses in connection with the Colonial collapse, and claims filed by all creditors total billions of dollars. Shortly after the fall of Colonial, many of the banks that had loaned money to the Debtors and the limited partnerships also failed. As a result, between January and September 1991, the FDIC was appointed receiver of five former Connecticut state or national banks—Citytrust, The Landmark Bank, Community National Bank, Suffield Bank, and The Connecticut Bank and Trust Company, N.A. These banks had previously filed proofs of claim in the consolidated cases.

Between December 1985 and June 1990, Sisti allegedly incurred obligations to these banks in connection with his Colonial activities as direct obligor, general partner, or guarantor in the amount of $66,169,921. These obligations are allegedly in default and owed to the FDIC as receiver.

The Trustee has been investigating the financial dealings of the Debtors, and has negotiated with the FDIC to examine the financial records of the five banks in receivership and to secure bank records involving the Debtors and their transactions. The Trustee claims to have issued over four hundred subpoenas to various parties in the course of his investigation.

### B. *The Florida Action.*

On December 2, 1991, the FDIC, as receiver of the five failed Connecticut banks, commenced an action in the United States District Court for the Southern District of Florida, *FDIC v. Helene L. Sisti*, No. 91–7866 Civ.–Zloch (S.D.Fla. Dec. 2, 1991) (the "Florida Action"), pursuant to its authority under 12 U.S.C. § 1821(d)(17)–(19) (Supp. II 1990).[2] The Florida Action sought to avoid

---

1. The consolidation was affirmed by this court over the objection of the FDIC. *FDIC v. Colonial Realty Co.,* 966 F.2d 57 (2d Cir.1992).

2. Section 1821(d)(17) provides in relevant part:
   (A) *In general*
      The [FDIC], as conservator or receiver for any insured depository institution, ... may avoid a transfer of any interest of ... any person who the [FDIC] determines is a debtor of the institution, in property, ... that was

made within 5 years of the date on which the [FDIC] was appointed conservator or receiver if such ... person voluntarily or involuntarily made such transfer ... with the intent to hinder, delay, or defraud the insured depository institution, [or] the [FDIC]....

   . . . .

   (D) *Rights under this paragraph*
      The rights under this paragraph [§ 1821(d)(17)] of the [FDIC] ... shall be superior to any rights of a trustee or any

the transfer of and recover approximately ten million dollars [3] that Sisti allegedly had fraudulently transferred to his wife, Helene L. Sisti, and Southern Ties, Inc., a Florida corporation. Some of these funds were subsequently transferred by the original transferees to other entities. Section 1821(d)(17) allows any transfer that was intended to hinder, delay, or defraud an insured depository institution or the FDIC as receiver to be set aside if the transfer was made within five years from the date that the FDIC was appointed receiver for the institution.

The FDIC alleged that between March and August 1990, Sisti made a series of fraudulent transfers directly or indirectly to the Florida Action defendants with the intent to hinder, delay, and defraud the FDIC or the five banks. Neither the Debtors nor the Bankruptcy Trustee were named in the Florida Action, which was brought only against the transferees to recover the transferred funds for the benefit of the estates of the failed banks.

On December 12, 1991, the United States District Court for the Southern District of Florida entered an *ex parte* temporary restraining order ("TRO") and appointed a trustee for the property at issue pursuant to § 1821(d)(18). The Trustee first learned

of the litigation on December 13, 1991 via a telephone call from Sisti's counsel. Although the Florida Action is still pending, the district court for the Southern District of Florida has dissolved the TRO and denied a motion by the FDIC to extend it. The defendants in the Florida Action have stipulated in the bankruptcy court that they will not transfer any assets previously subject to the restraints of the TRO without three days prior written notice to the bankruptcy court and the Trustee.

## C. *The Proceedings Below.*

On December 16, 1991, the Trustee moved in the United States Bankruptcy Court for the District of Connecticut for an order determining that the Florida Action violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362 (1988 & Supp. II 1990),[4] and enjoining the FDIC from continuing that action. On the same day, the FDIC moved in the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. § 157(d) (1988), to withdraw the contested matter commenced by the Trustee's motion to the district court. The district court denied the FDIC's motion, and the matter proceeded before the bankruptcy court.[5]

---

other party (other than any party which is a Federal agency) under Title 11.

The remainder of § 1821(d)(17) sets forth the extent of the FDIC's right of recovery and the rights of transferees. Section 1821(d)(18) empowers the FDIC-receiver to obtain attachment of assets and other injunctive relief pursuant to the relaxed standards set forth in § 1821(d)(19).

3. The bankruptcy court set this figure at approximately twenty million dollars, 134 B.R. at 1018, apparently aggregating the original transfers from Sisti with subsequent transfers of the same funds. The briefs of the parties state a figure of approximately eleven million dollars. The total of the original fraudulent transfers stated in the FDIC's complaint in the Florida Action is $9,926,041.21.

4. Section 362 provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of —— ...

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other

action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [or]

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over the property of the estate . . . .

11 U.S.C. § 362(a)(1), (3) (1988). It is clear, and the parties agree, that none of the exceptions stated in subsection (b) of § 362 are applicable in this case.

5. Although the issue is moot at this juncture, it would appear that the FDIC's motion should have been granted, pursuant to § 157(d), in view of the FDIC's timely motion and the asserted conflict between provisions of the Bankruptcy Code and other federal statutes. Section 157(d) provides in pertinent part:

The district court shall, on timely motion of a party, ... withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and

The Trustee contended that the fraudulent conveyance claims asserted by the FDIC in the Florida Action are property of the consolidated estate over which the bankruptcy court has exclusive jurisdiction, and therefore the automatic stay applies to the FDIC. The FDIC countered that § 1821(d)(17)(D), by providing that the FDIC's rights under paragraph 17 of § 1821(d) "shall be superior to any rights of a trustee ... under title 11," *see supra* note 2, precluded application of the automatic stay to the FDIC. The FDIC also argued that the bankruptcy court lacked jurisdiction to make any determination of the Trustee's motion in view of 12 U.S.C. § 1821(d)(13)(D) (Supp. I 1989), a position rejected by the bankruptcy court and not pursued on appeal, and 12 U.S.C. § 1821(j) (Supp. I 1989), which precludes court action "to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." [6]

The bankruptcy court ruled in favor of the Trustee with respect to the applicability of the automatic stay. The court stated that 28 U.S.C. § 1334(d) (1988) provided it with "exclusive jurisdiction" over the property of the Debtors upon reference of the Title 11 cases by the district court pursuant to 28 U.S.C. § 157(a) (1988), and that it was "well settled" that fraudulent conveyance actions based upon prepetition transfers by a debtor are property of the estate. 134 B.R. at 1020. The court then reasoned that the § 1821(d)(17)(D) grant of a "superior" right to the FDIC simply indicates that the FDIC's claim is "prior in right," like a claim of a secured creditor, but does not establish any exemption from the § 362 automatic stay. 134 B.R. at 1021. The court stated that the stay does not "constitute a 'right' of a trustee, but a congressionally-mandated restraint that springs into existence upon the filing of a bankruptcy case." *Id.* The court noted that

the Crime Control Act of 1990, which added § 1821(d)(17) and (j) to the United States Code, made no amendments to § 362(b) to provide any exemption for the FDIC from the automatic stay, although making numerous other amendments to the Bankruptcy Code to harmonize it with the new enactments regarding the FDIC. 134 B.R. at 1021–22.

The court stated that the FDIC could seek relief from the stay, at which time the Trustee would have the opportunity to inquire whether the FDIC could establish the specific intent requirement of § 1821(d)(17)(A), rather than permitting the FDIC to "unilaterally make that decision for itself." 134 B.R. at 1022. The court noted that the Trustee could also explore "whether other alternatives are available to the FDIC to satisfy [the obligations due to the FDIC from Sisti] without depriving the estate's creditors of their right to share in [the fraudulently transferred] estate property." *Id.* Finally, the court noted the "intolerable burden" that the FDIC could impose upon bankruptcy trustees by forcing them to "uncover" FDIC actions throughout the country and seek to intervene. *Id.*

The court also rejected the FDIC's contention that in view of § 1821(j), the bankruptcy court lacked jurisdiction to make a determination as to the applicability of the automatic stay and to issue an injunction. 134 B.R. at 1023. The court ruled that the stay was "mandated by a congressional act, not a restraint imposed by a court," and accordingly that § 1821(j) did not prevent entry of an injunction to enforce the stay. 134 B.R. at 1023–24. Finally, the court held that because the stay is effective automatically, all actions taken in violation of the stay were "void and of no effect." *Id.* at 1024.

---

other laws of the United States regulating organizations or activities affecting interstate commerce.

This provision was not cited to the district court until after it had denied the withdrawal motion and the bankruptcy court had ruled in favor of the Trustee on his motion.

**6.** Section 1821(j) states:
Except as provided in this section, no court may take any action, except at the request of the Board of Directors [of the FDIC] by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver.

The district court on appeal affirmed the decision and order of the bankruptcy court, essentially adopting the reasoning of the bankruptcy court. *In re Colonial Realty Co.*, No. 3:91–200X Civ. (JAC), 1991 WL 487192, 1991 U.S.Dist. LEXIS 19014 (D.Conn. Dec. 30, 1991). This appeal followed. We note that this case raises issues of first impression concerning the interaction of certain provisions of the Federal Deposit Insurance Act, 12 U.S.C. § 1811 (1988 & Supp. III 1991) *et seq.*, and the Bankruptcy Code, 11 U.S.C. § 101 (1988 & Supp. II 1990) *et seq.*

### Discussion

We review *de novo* the decisions of the district court and bankruptcy court "because the questions presented are matters of statutory interpretation." *In re Koreag, Controle et Revision S.A. (Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc.)*, 961 F.2d 341, 347–48 (2d Cir.1992) (citing *Truck Drivers Local 807 v. Carey Transp. Inc.*, 816 F.2d 82, 88 (2d Cir.1987)); *see also In re Manville Forest Prods. Corp. (Gulf States Exploration Co. v. Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1388 (2d Cir.1990) (conclusions of law reviewed *de novo* ) (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987) (per curiam)).

The FDIC pursues three arguments on appeal.[7] First, the FDIC contends that its cause of action under § 1821(d)(17) is not property of the bankruptcy estate and therefore is not subject to the automatic stay under § 362. Alternatively, it asserts that § 1821(d)(17)(D) precludes application of the § 362 automatic stay by earmarking the FDIC's § 1821(d)(17) rights as superior to those of a bankruptcy trustee. Finally, the FDIC asserts that the bankruptcy and district courts did not have jurisdiction to issue the injunction under appeal in view of § 1821(j), which bars any court from re-

straining or affecting the exercise of powers or functions of the FDIC as receiver.

### A. Applicability of the Automatic Stay.

■ The filing of a bankruptcy petition operates as a stay, *inter alia,* of "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor ... or to recover a claim against the debtor that arose before the commencement of the case," and "any act to obtain possession of property of the estate." § 362(a)(1), (3); *see supra* note 4. Preliminarily, it is clear that the Florida Action is not asserted against any of the Debtors, including Sisti. Accordingly, the Florida Action would come within the terms of § 362(a) if it is (1) to obtain possession of property of the estate or (2) to recover a claim against the debtor.

### 1. Property of the Estate.

The FDIC asserts that the Florida cause of action belongs exclusively to the FDIC as receiver, and therefore is not (1) property of the estate or (2) subject to the automatic stay. The exclusive nature of the § 1821(d)(17) cause of action is not contested by the parties. It springs directly from the status of the FDIC as receiver of the failed banks and is expressly granted to the FDIC by that statute. *See supra* note 2.

The bankruptcy and district courts ruled that § 1821(d)(17) vests the FDIC with a fraudulent conveyance action, and that fraudulent conveyance actions based upon prepetition transfers by a debtor are deemed property of the bankruptcy estate. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case," 11 U.S.C. § 541(a)(1) (1988), and the automatic stay extends to "any act to obtain possession of property of the

---

**7.** The Trustee contends on appeal that: (1) § 1821(d)(17) was enacted in 1990 after the occurrence of the alleged fraudulent transfers at issue herein, and may not be retroactively applied to them; and (2) such retroactive application would constitute an unconstitutional taking of property of the bankruptcy estate. In accordance with the Trustee's concession in his appeal brief and at oral argument, we *do not* address these contentions in view of our disposition of this appeal.

estate or of property from the estate." § 362(a)(3).

On appeal, the Trustee asserts that the transferred property, rather than the FDIC action to recover it, is property of the estate that provides the basis for application of the automatic stay. The Trustee refers us to *In re S.I. Acquisition, Inc. (S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.)*, 817 F.2d 1142, 1149–50 (5th Cir.1987), and *In re MortgageAmerica Corp. (American Nat'l Bank v. MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir.1983), for support of this view. *See also In re Sherk (Sherk v. Texas Bankers Life & Loan Ins. Co.)*, 918 F.2d 1170, 1175–77 (5th Cir.1990).

The leading case is *MortgageAmerica*, in which the Fifth Circuit ruled that although a fraudulent transferor could not invoke the power of the courts to retrieve the transferred property, he still had an interest in the transferred property that could be reached by his creditors. *See* 714 F.2d at 1275. The court reasoned that "when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a 'legal or equitable interest[ ]' in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code." 714 F.2d at 1275.

As the Trustee notes, we have cited *MortgageAmerica* with approval in a number of cases. *See In re Crysen/Montenay Energy Co. (Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.)*, 902 F.2d 1098, 1101 (2d Cir.1990); *St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 696–97 (2d Cir.1989); *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986); *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984). We are now persuaded, however, by *In re Saunders*, 101 B.R. 303, 304–06 (Bankr.N.D.Fla.1989), that the correct result was reached in *MortgageAmerica*, but a different statutory analysis is appropriate.

In accordance with 11 U.S.C. § 541(a)(1) (1988), the property of a bankruptcy estate includes (with exceptions not presently pertinent) "all legal or equitable interests of the debtor in property as of the commencement of the case;" and pursuant to 11 U.S.C. § 541(a)(3) (1988), the property of a bankruptcy estate also includes "[a]ny interest in property that the trustee recovers" under specified Bankruptcy Code provisions, including 11 U.S.C. § 550 (1988). Section 550 authorizes a trustee to recover transferred property for the benefit of the estate to the extent that a transfer is avoided, *inter alia*, as fraudulent under either 11 U.S.C. § 544 (1988) or § 548 (1988 & Supp. II 1990).

■ As stated in *Saunders:* "If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions." 101 B.R. at 305. Further, "the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered." *Id. Saunders* also pointed to potential complexities in the administration of bankruptcy estates that ensue from regarding fraudulently transferred property as part of the bankruptcy estate under § 541(a)(1) prior to its recovery. 101 B.R. at 305.

### 2. Recovery of a Claim Against the Debtor.

■ Notwithstanding this analysis, the Florida Action may still be subject to the automatic stay under § 362(a)(1). Section 362(a)(1) provides that actions "against the debtor" *or* "to recover a claim against the debtor" are subject to the automatic stay. The latter category must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage. Upon analysis, a third-party action to recover fraudulently transferred property is properly regarded as undertaken "to recover a claim against the debtor"

and subject to the automatic stay pursuant to § 362(a)(1). As *Saunders* explains:

> While a fraudulent transfer action may be an action against a third party, it is also an action "to recover a claim against the debtor." Absent a claim against the debtor, there is no independent basis for the action against the transferee. Moreover, the creditor can only recover property or value thereof received from the debtor sufficient to satisfy the creditor's claim against the debtor. This interpretation is consistent with the legislative history of § 362(a)(1) which states:
>
> > The provision in this first paragraph prohibiting the issuance of process is designed to prevent the issuance of a writ of execution by a judgment creditor of the debtor to obtain property that was property of the debtor before the case *but that was transferred,* subject to the judgment lien, before the case. Because the other paragraphs of this subsection refer only to property of the estate or property of the debtor, *neither of which apply to this kind of transferred property,* they would not prohibit pursuit of the transferred property by issuance *of process.* (emphasis supplied).
> >
> > H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 341 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6297.

101 B.R. at 305–06; *see also Bank of Boston Conn. v. Piscatelli,* 41 Conn.Supp. 581, 584–86, 596 A.2d 27, 29–30 (Super.Ct.1991) (partially staying Connecticut fraudulent conveyance action in reliance upon *Saunders* ).

In the Florida Action, the FDIC is clearly seeking to recover a claim against Sisti. The complaint filed by the FDIC in that case specifically alleges that Sisti is liable to the FDIC as a result of loans made by the failed banks, and that the named defendants are liable as fraudulent transferees of Sisti. Thus, if Sisti were not liable to the FDIC on the bank loans, the FDIC would have no independent claim against these defendants.

■ We conclude that although the Florida Action is not an "act to obtain possession of property of the estate" within the meaning of § 362(a)(3) or an "action ... against the debtor" within the meaning of § 362(a)(1), it is an "action ... to recover a claim against the debtor" within the meaning of § 362(a)(1). The Florida Action is therefore subject to the automatic stay unless § 362(a)(1) is "trumped" in this case by § 1821(d)(17)–(19) or (j). We proceed to these issues.

### B. *Implicit Partial Repeal or Limitation of § 362 by § 1821(d)(17)–(19).*

The FDIC contends in effect that the § 362 automatic stay was partially repealed or limited by the 1990 enactment of § 1821(d)(17)–(19), and especially by the provision of § 1821(d)(17)(D) that the rights of the FDIC under § 1821(d)(17) "shall be superior to any rights of a trustee ... under Title 11." *See supra* note 2. Because, as will appear, there is no indication of any express intention to partially repeal or limit § 362 as a result of the 1990 legislation, this argument amounts to a claim of repeal by implication.

■ "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (citing *Georgia v. Pennsylvania R.R.,* 324 U.S. 439, 456–57, 65 S.Ct. 716, 726, 89 L.Ed. 1051 (1945)). Further, " [t]he intention of the legislature to repeal "must be clear and manifest." ' " *Id.* at 551, 94 S.Ct. at 2483 (quoting *United States v. Borden Co.,* 308 U.S. 188, 198 (1939) (quoting *Red Rock v. Henry,* 106 U.S. 596, 602, 1 S.Ct. 434, 438, 27 L.Ed. 251 (1883))). It follows that in addressing arguably inconsistent requirements of two statutes, the courts must give effect to both where possible. *See Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *Morton,* 417 U.S. at 551, 94 S.Ct. at 2483.

It is also presumed that Congress " 'legislate[s] with knowledge of former related statutes,' and will expressly designate the

provisions whose application it wishes to suspend, rather than leave that consequence to the uncertainties of implication compounded by the vagaries of judicial construction." *United States v. Hansen,* 772 F.2d 940, 944–45 (D.C.Cir.1985) (quoting *Continental Ins. Co. v. Simpson,* 8 F.2d 439, 442 (4th Cir.1925) (alteration in *Hansen* )), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986). Thus, in passing the Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4789 (codified at scattered sections of U.S.C.), §§ 2528(a) and 2521(a)(1) of which enacted § 1821(d)(17)–(19), Congress gave careful consideration to the coordination of the banking law amendments in that statute with the existing provisions of the Bankruptcy Code. *See, e.g.,* Crime Control Act of 1990 § 2522(a), 104 Stat. at 4865–66 (amending § 523(a) to add additional exceptions to discharge; adding §§ 523(c)(2) and § 523(e) in further modification of discharge provisions); *id.* § 2522(b), 104 Stat. at 4866 (adding § 522(c)(3) as an additional exception to § 522 exemption); *id.* § 2522(c), 104 Stat. at 4866–67 (adding § 365(*o*) to deem commitments to maintain capital of insured depositary institution to be assumed by bankruptcy trustee); *id.* § 2522(d), 104 Stat. at 4867 (adding § 507(a)(8) to provide priority claim for bankruptcy debtor's commitment to designated federal regulator to maintain capital of an insured depository institution); *id.* § 522(e), 104 Stat. at 4867–68 (adding various definitions to § 101); *cf.* 134 B.R. at 1021 n. 8 (bankruptcy court's summary of above amendments to Bankruptcy Code).

▪ Given this careful attention to the harmonization of the new banking provisions with the existing Bankruptcy Code, it becomes especially implausible to conclude that a quite significant modification of the bankruptcy automatic stay was enacted by implication. Had Congress wished to effectuate the statutory scheme for which the FDIC contends on this appeal, it might have, for example: (1) exempted the FDIC in the exercise of its powers under § 1821(d)(17)–(19) from the provisions of the automatic stay by amending § 362(b); (2) excluded property which the FDIC seeks to recover under § 1821(d)(17)–(19) from the property of the estate by amending § 541; or (3) provided in § 1821 that the automatic stay does not apply when the FDIC acts under § 1821(d)(17)–(19). Congress chose none of these alternatives.

The purpose of the automatic stay is "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Fidelity Mortgage Investors (Fidelity Mortgage Investors v. Camelia Builders, Inc.),* 550 F.2d 47, 55 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *see also In re AP Indus., Inc. (AP Indus., Inc. v. SN Phelps & Co.),* 117 B.R. 789, 798 (Bankr.S.D.N.Y.1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

The FDIC suggests that since § 1821(d)(17) actions belong exclusively to it as receiver, there will not be a scramble by creditors for the debtor's assets. In oral argument, however, the implausibility of this position became clear. The FDIC acknowledged that its rights to the fraudulently conveyed property, although superior to those of the trustee in bankruptcy, are not superior to those of other federal agencies. *See* § 1821(d)(17)(D). The FDIC accordingly suggested that if other federal agencies had claims, the FDIC would responsibly distribute the recovered assets to those agencies. The end effect of this arrangement would frustrate the central purpose of the automatic stay—to have *all* creditors' claims resolved in a single court. Under the FDIC's interpretation, it would be a creditor with the power to operate its own "bankruptcy court" and be responsible for the determination and distribution of the claims of the other federal agencies.

Additionally, although the rights of the FDIC are specified by § 1821(d)(17)(D) to be "superior" to those of a bankruptcy trustee, neither the rights nor the obligations of a trustee are thereby extinguished so as to warrant a total disregard by a trustee of actions initiated by the FDIC affecting the bankruptcy estate which the trustee is charged to administer. Thus, a bankruptcy trustee would be compelled to "uncover" FDIC actions throughout the country and seek to intervene in each of those forums, needlessly expending time and money that the bankruptcy laws were designed to conserve and resulting in the financial detriment of creditors in general.

Furthermore, it is well established that other federal agencies, such as the Internal Revenue Service ("IRS"), are required to obtain relief from the automatic stay before they can enforce prepetition debts. *See, e.g., United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209–212, 103 S.Ct. 2309, 2315–2317, 76 L.Ed.2d 515 (1983) (IRS must seek relief from stay to liquidate property seized to satisfy prepetition tax lien). Thus, it is illogical to conclude that other federal agencies are required to seek relief from the stay to act on their own, but when the FDIC becomes involved, such agencies may effectively have their claims satisfied in circumvention of the bankruptcy proceedings and the automatic stay in an FDIC-administered "side" proceeding.

■ Finally, although § 1821(d)(17) is framed in terms of the FDIC having "rights" that are "superior" to those of a Title 11 trustee or any other party, the exception for federal agencies indicates that a preferential claim, rather than any exemption from established statutory procedures, is at the heart of the FDIC's enhanced "rights." Thus, drawing upon *Whiting Pools*, the bankruptcy court concluded in this case that "the word 'superior' in § 1821(d)(17)(D) means 'prior in right.'" 134 B.R. at 1021; *see also* Robert L. Jordan & William D. Warren, *Bankruptcy* 211 (2d ed. 1989) ("an unsecured claim is a right to receive a share of the bankruptcy estate to the extent that the estate has not been exhausted by *superior* competing claims [emphasis added]"). Pertinent legislative history supports this view. *See* H.R.Rep. No. 101–681(I), 101st Cong., 2d Sess. 181 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6587 (language of § 1821(d)(17)(D) "gives the [FDIC] superior rights to the [bankruptcy] trustee ... *with respect to the property transferred*" [emphasis added]).

The FDIC contends that if it cannot act outside the bankruptcy proceedings, it will lose the ability to use specific tools, such as the modified temporary restraining order standards provided by § 1821(d)(18)–(19), that enhance its ability to act quickly in order to achieve maximum recovery. Section 1821(d)(18) specifically provides, however, that the FDIC may seek an order in any court of competent jurisdiction, and we see no reason why a bankruptcy court would be unable to apply § 1821 appropriately and aid the FDIC in its recovery. In the alternative, the FDIC could seek *ex parte* relief from the automatic stay via § 362(f), or seek to withdraw the reference from the bankruptcy court to the district court pursuant to § 157(d) and obtain appropriate relief in that forum. *See supra* note 5.

The FDIC asserts that it will not be accorded the preference to which it is entitled under § 1821(d)(17)–(19) by bankruptcy courts, pointing to a statement by the bankruptcy court in this case that bankruptcy proceedings might assess "the extent of the debt to the insured bank, and whether other alternatives are available to the FDIC to satisfy [the obligation due to the FDIC from Sisti] without depriving the estate's creditors of their right to share in [the fraudulently transferred] estate property." 134 B.R. at 1022. We will not add our own dictum to the bankruptcy court's dictum regarding possible future applications of this new statutory provision. Suffice it to say that there are adequate avenues of appeal to address any errors the FDIC may perceive in the future interpretation of § 1821(d)(17)–(19) by the bankruptcy courts.

In sum, in the absence of any amendment of the § 362 automatic stay in the enactment of the Crime Control Act of 1990, we decline to imply the significant limitation of § 362 that the FDIC would extrapolate from § 1821(d)(17)–(19).

### C. Impact of § 1821(j) upon Bankruptcy Court's Authority to Enjoin the FDIC.

The FDIC also contends that the bankruptcy court lacked jurisdiction to apply the automatic stay and correspondingly enjoin the FDIC in view of § 1821(j)'s prescription that "no court may take any action ... to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." *See supra* note 6.

Two Supreme Court decisions are pertinent to this issue, but each is ultimately distinguishable. *Board of Governors of the Federal Reserve Sys. of the United States v. MCorp Fin., Inc.,* — U.S. —, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), involved an effort by a bank holding company in voluntary bankruptcy to enjoin two administrative proceedings concerning its affairs that were undertaken by the Board of Governors of the Federal Reserve System (the "Board"). The bank sought application of the bankruptcy stay; the Board claimed the protection of 12 U.S.C. § 1818(i)(1) (1988 & Supp. I 1989), the applicable banking statute in that case and an analogue to § 1821(j).[8] The Court decided, however, that the administrative proceedings were exempted from the § 362 automatic stay by § 362(b)(4) (exempting "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power"), — U.S. at —, 112 S.Ct. at 464, and did not reach the Board's contention that § 1818(i)(1) ousted the bankruptcy court of jurisdiction without regard to the § 362(b)(4) exemption. — U.S. at — n. 11, 112 S.Ct. at 464 n. 11.

In *Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), 12 U.S.C. § 1464(d)(6)(C) (1988),[9] another analogue to § 1821(j), was invoked by the Federal Savings and Loan Insurance Corporation ("FSLIC") acting as receiver of a failed savings and loan association. Coit Independence Joint Venture ("Coit") had an action pending against the association claiming usury and breach of fiduciary duty when the FSLIC became the association's receiver. The FSLIC sought to dismiss the pending action, invoking § 1464(d)(6)(C), but the Court ruled in favor of Coit, concluding "that Congress has not granted FSLIC the power to adjudicate creditors' claims against the assets of a failed savings and loan association under FSLIC receivership, and that creditors are entitled to *de novo* consideration of their claims in court." 489 U.S. at 587, 109 S.Ct. at 1376. Section 1464(d)(6)(C) was deemed inapplicable because the FSLIC sought to function beyond the scope of its delegated "powers or functions," and was read to "prohibit[ ] untimely challenges to the receiver's appointment or collateral attacks attempting to restrain the receiver from carrying out its basic functions." 489 U.S. at 575, 109 S.Ct. at 1369.

Clearly, neither decision controls the outcome in this case. *MCorp* does not apply because no § 362(b) exemption is claimed to be applicable. *Coit* is afield because the FDIC is clearly acting within the scope of a power vested in it by § 1821(d)(17)–(19). The issue is whether in so acting, § 1821(j) exempts it from a court order intended to implement the § 362 stay, which is "applicable to all entities" upon the filing of a

---

**8.** Section 1818(i)(1) provides in pertinent part:
[E]xcept as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.

**9.** Section 1464(d)(6)(C) provided:

Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the [Federal Home Loan Bank] Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

bankruptcy petition under 11 U.S.C. §§ 301, 302, or 303 (1988), without more.[10]

There have been a number of recent cases in the lower courts that have invoked § 1821(j) to block challenges to actions of a statutory receiver or conservator. Again, none are directly on point here.

Some of these cases simply posed questions as to the asserted "powers or functions" of a receiver and were resolved in favor of the asserted authority. *See Gross v. Bell Sav. Bank,* 974 F.2d 403, 408 (3d Cir.1992) (Resolution Trust Corporation ("RTC") authorized to withhold pension and profit-sharing assets from distribution to bank insiders); *In re Landmark Land Co., Inc. (Landmark Land Co., Inc. v. RTC),* 973 F.2d 283, 290 (4th Cir.1992) (RTC as receiver of failed bank authorized to convene meeting of shareholders to exercise control over insolvent subsidiaries); *281–300 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir.1991) ("courts lack the ability to enjoin nonjudicial foreclosures that are within the statutory powers of the RTC as conservator or receiver"), *cert. denied,* —— U.S. ——, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992).

Others involved claims that a receiver operating generally on the basis of proper statutory authorization was precluded from a proposed course of action by other applicable law or agreement. In *Rosa v. RTC,* 938 F.2d 383 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991), § 1821(j) was deemed to bar a preliminary injunction sought by participants in an ERISA plan of a bank in receivership. The court stated that "to the extent of a conflict between [§ 1821(j)] and provisions of ERISA authorizing relief, § 1821(j) controls." 938 F.2d at 397. The court accordingly refused (1) to require the RTC to make contributions to the ERISA plan, *id.* at 398, or (2) to order the RTC not to terminate the plan. *Id.* at 398–99.

*Telematics Int'l, Inc. v. NEMLC Leasing Corp.,* 967 F.2d 703 (1st Cir.1992), applied § 1821(j) against a party seeking to bar the FDIC as receiver from foreclosing upon a certificate of deposit pledged to the bank in receivership by claiming a defect in the contractual obligation underlying the pledge. The court denied an injunction, invoking § 1821(j) and noting that an administrative claims procedure was available to the party. 967 F.2d at 705–06.

The only one of the above cases that addresses the issue presented here is *Gross,* which states:

This court has held that the RTC's powers are broad. *Rosa,* 938 F.2d at 398. Of course, the RTC's power is not limitless. That is, federal courts have the ability to restrain the RTC where the Corporation is acting clearly outside its statutory powers. *See Coit Indep. Joint Venture v. FSLIC,* 489 U.S. 561, 572–73, 109 S.Ct. 1361, 1368, 103 L.Ed.2d 602 (1989) (under FIRREA's precursor, FSLIC not given power to adjudicate state law claims; dismissal of federal court action reversed). *Further injunctive relief is appropriate where that remedy is imposed by statute automatically and by operation of law, without any action by a court. See, e.g., In re Lane,* 136 B.R. 319, 320–21 (D.Mass. 1992) (RTC has no power to foreclose on an asset when a bankruptcy stay is in effect; TRO issued); *In re Colonial Realty Co.,* Civ.Action No. 3:91–200X(JAC) 1991 WL 433816, *4, 1991 U.S.Dist. LEXIS 19014, *5 (D.Conn. Dec. 30, 1991) (automatic stay under the Bankruptcy Code overrides FIRREA's anti-injunction provision).

974 F.2d at 407 (emphasis added).

It is surely significant that the Third Circuit has cited with approval the district court ruling that is on appeal in this case. *Lane,* the other case cited by *Gross* for the

---

**10.** The bankruptcy court intended to make a ruling indicating that the automatic stay applied to the Florida Action without issuing an injunction. *Colonial Realty,* 134 B.R. at 1023. The court decided to enter an injunction pursuant to 11 U.S.C. § 105(a) (1988) only after the FDIC's counsel "stated that the FDIC would not consider itself bound by the court's determination as to the applicability of the automatic stay even while seeking its review." 134 B.R. at 1023. Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11 of the United States Code]."

viability of the § 362 bankruptcy stay despite § 1821(j), issued an order staying the FDIC from effecting a foreclosure sale of a bankruptcy debtor's home pending the resolution of the debtor's appeal from the bankruptcy court to the district court. In response to the FDIC's assertion that § 1821(j) precluded the stay order, the district court stated:

> In effect then, FDIC asks this court to treat FDIC as having a power that overrides both substantive and procedural law governing bankruptcy proceedings, simply because enforcement of those bodies of law places some constraints on FDIC's power to foreclose under mortgages in which it has interests as successor to a failed bank. Such an extraordinary interpretation of the manifested intent of Congress cannot be sustained.

136 B.R. at 321.

*Carlton v. Firstcorp, Inc.*, 967 F.2d 942 (4th Cir.1992), is more favorable to the FDIC's view. The Fourth Circuit there ruled against the application of the § 362 automatic stay on behalf of a bank holding company in chapter 11 to bar a temporary cease and desist order issued by the Office of Thrift Supervision ("OTS") in its capacity as receiver of a bank subsidiary of the holding company. The order required the holding company to take various measures to improve the capital position of its subsidiary. 967 F.2d at 943. The Fourth Circuit chose to premise its ruling upon § 1818(i)(1), and explicitly declined to determine whether the order came within the exemptions provided by § 362(b)(4) and (5). 967 F.2d at 946 n. 5. In doing so, the court took the opposite approach to that followed by the Supreme Court in *MCorp. See* —— U.S. at —— & n. 11, 112 S.Ct. at 464 & n. 11.

■ As noted in *Gross*, the automatic stay is imposed by Congressional mandate and not by court order. 974 F.2d at 407; *see also Colonial Realty*, 134 B.R. at 1023–24. By its very terms, no action by any court is necessary for the stay to take effect. *See* § 362(a). The stay is a procedural rule, designed to provide for an orderly bankruptcy proceeding. *See In re*

*Adana Mortgage Bankers, Inc.*, 12 B.R. 1012, 1016–17 (Bankr.N.D.Ga.1981), *vacated as moot by stipulation*, 687 F.2d 344 (11th Cir.1982). Indeed, so central is the § 362 stay to an orderly bankruptcy process that " 'actions taken in violation of the stay are void and without effect.' " *In re 48th St. Steakhouse, Inc. (48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987) (quoting 2 Lawrence P. King, *Collier on Bankruptcy* § 362.11 (15th ed. 1987)), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *see also In re Smith (Smith v. First Am. Bank, N.A.)*, 876 F.2d 524, 526 (6th Cir.1989) (even if creditor has no notice of stay, actions taken in violation of stay are generally void).

■ Thus, the injunctive order issued in this case to implement the stay was in a sense superfluous, prompted only by the FDIC's indication that a specific injunctive order would be required to induce its compliance with the statutory stay. *See supra* note 10. The stay imposed by § 362(a) is automatically "applicable to all entities" without any need for the intervention of any court or ruling. Rather, the statutory plan requires a court order for *relief* from the automatically imposed stay. *See* § 362(d)-(g). We accordingly conclude that the § 1821(j) ban upon *"court ... action ... to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver [emphasis added]"* does not inhibit the operation of the automatic *statutory* stay imposed by § 362(a).

### Conclusion

The order of the district court is affirmed.