**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENDTH CIRCUIT

---

ERIC C. RAJALA, Trustee in
Bankruptcy for the Estate of
Generation Resources Holding
Company, LLC,

      Plaintiff - Appellant,

v.

ROBERT H. GARDNER; ROBBIN M.
GARDNER; R. JAMES ANSEL;
VIRGINIA Z. ANSEL; WILLIAM W.
STEVENS; AKIKO N. STEVENS;
LOOKOUT WINDPOWER HOLDING
COMPANY, LLC, a Missouri Limited
Liability Company; FORWARD
WINDPOWER HOLDING
COMPANY, LLC, a Missouri Limited
Liability Company; LOOKOUT
WINDPOWER HOLDING
COMPANY, LLC (MO); FORWARD
WINDPOWER HOLDING
COMPANY, LLC (MO); STEVENS
FAMILY INVESTMENT COMPANY,
LLC, a Missouri LLC,

      Defendants - Appellees,

and

FREESTREAM CAPITAL, LLC;
GARDNER FAMILY INVESTMENT
COMPANY, LLC, a Missouri LLC;
WINDFORCE HOLDINGS, INC.;

No. 12-3113

Consol Defendants - Appellees,

and

EDISON MISSION ENERGY,a California corporation; MISSION WIND PENNSYLVANIA, INC., a Delaware corporation; MISSION WIND PA TWO, INC., a Delaware Corporation; MISSION WIND PA THREE, INC., a Delaware corporation; LOOKOUT WIND POWER, LLC, a Delaware Limited Liability Corporation; FORWARD WIND POWER, LLC, a Delaware Limited Liability Company,

Defendants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:09-CV-02482-EFM-KMH and 2:11-CV-02524-EFM-KMH)**

---

Michael P. Healy (and Michael J. Fleming of The Healy Law Firm, L.L.C., on the briefs), Lee's Summit, Missouri, for Plaintiff - Appellant.

Scott J. Goldstein (Douglas M. Weems and Barry L. Pickens of Spencer, Fane, Britt & Browne, L.L.P, with him on the brief), Kansas City, Missouri, for Defendants - Appellees.

Tyler W. Hudson and Adam S. Davis of Wagstaff & Cartmell, L.L.P., Kansas City, Missouri, for Consol Defendant -Appellee

---

Before **KELLY**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Plaintiff-Appellant Eric Rajala, Trustee of the bankruptcy estate of Generation Resources Holding Company, LLC (GRHC), appeals from the district court's order granting motions to distribute (by Defendants-Appellees FreeStream Capital, LLC (FreeStream) and Lookout Windpower Holding Co., LLC (LWHC)) approximately $9 million held in escrow.  This amount represents part of the purchase price of a wind power project allegedly developed by GRHC.  In a nutshell, the Trustee claims that the Debtor, GRHC, has been left with $5 million in debt while the individual Defendants-Appellees and their affiliated entities received some $13 million in proceeds from the sale of several wind power projects, unburdened by the debt.

At issue is what constitutes property of the bankruptcy estate and whether allegedly fraudulently transferred property is subject to the Bankruptcy Code's automatic stay *before* a trustee recovers the property through an avoidance action.  See 11 U.S.C. §§ 362, 541(a).  The district court held that allegedly fraudulently transferred property is not part of the bankruptcy estate until recovered and therefore is beyond the reach of the automatic stay.  Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

GRHC was formed in 2002 for the purpose of developing wind-generated power projects. Aplt. App. 69–70. As part of its development strategy, GRHC employed FreeStream to provide advisory services. Id. at 79. In June 2005, GRHC entered into a Memorandum of Understanding (MOU) with Edison Capital (Edison). Id. at 75–77. The MOU detailed Edison's contemplated purchase of three GRHC wind power projects, including the "Lookout" project. Id. Based on the MOU, development agreements were also drafted. Id. at 79.

Later that year, several GRHC insiders formed LWHC.[1] Id. at 80. On February 3, 2006, LWHC closed a deal with Edison for the sale of the wind power projects. Id. at 83. According to the second amended complaint, the GRHC insiders caused a switch in the identity of the projects' developer from GRHC to LWHC. Id.

On March 28, 2007, LWHC entered into a contract, the Lookout Redemption Agreement (LRA), with an Edison subsidiary. Id. at 96–97, 319–24. The LRA provided that once Lookout achieved commercial operation (at which point it would be fully owned by Edison), it would pay "25% of the Final Installment to FreeStream [], as full satisfaction of all amounts that may be due to

---

[1] LWHC was first established as a Pennsylvania company (LWHC-PA), but LWHC-PA then transferred its interests to a newly-created Missouri company, LWHC-MO. Id. at 91.

FreeStream [] from Lookout, Developer Member and/or Investor Member, and (ii) 75% of the Final Installment to Developer Member." Id. at 320. The LRA identified LWHC as the "Developer Member." Id. at 319.

*The Fraudulent Transfer Claims*

In September 2009, the Trustee filed suit in Kansas federal district court against six individual defendants and numerous companies. Id. at 20, 58–67. The Trustee refers to several of the Defendants as "insiders," based on their ownership and control of GRHC. Id. at 59. The second amended complaint contains numerous claims, including fraudulent transfer claims. Id. at 56–156. The Trustee alleges the insiders fraudulently transferred GRHC's development and redemption opportunities to insider-owned companies. Id. at 108–37.

*The Pennsylvania Case*

In April 2009, LWHC and FreeStream sued Edison in federal district court in the Western District of Pennsylvania, seeking the final installment due under the LRA Id. at 166. In an effort to suspend LWHC and FreeStream's suit, the Trustee requested that the Kansas federal district court stay the Pennsylvania case or hold that any judgment obtained could not result in collateral estoppel in the Kansas case. Id. at 157–58, 200–01. The Trustee contended that any proceeds would be property of GRHC's bankruptcy estate—thus related to the action in Kansas federal district court. Id. The Kansas federal district court denied the Trustee's motion, and the Pennsylvania case proceeded. Id.

Shortly before the Pennsylvania case went to trial, the Trustee filed a notice of bankruptcy with the Pennsylvania court, followed by a motion to stay the case or, alternatively, transfer it to Kansas. Id. at 188, 193–94, 199–214. The Trustee argued that Lookout's sale price was property of GRHC's bankruptcy estate and, therefore, subject to the automatic stay. Id. at 202–03.

On May 31, 2011, the Pennsylvania federal district court declined the Trustee's motion to stay or transfer, and proceeded to enter judgment in favor LWHC and FreeStream for approximately $9 million (75% to LWHC; 25% to FreeStream). Id. at 187, 197–98. However, the court transferred the issue of whether the judgment was part of GRHC's bankruptcy estate to the Kansas bankruptcy court. Id. at 195–96, 198. The Pennsylvania court also ordered that the judgment funds be deposited with the Kansas bankruptcy court. Id. 160–61, 198.

Once in Kansas bankruptcy court, LWHC and FreeStream successfully moved to withdraw the case to Kansas federal district court. Id. at 363. The court also consolidated the Pennsylvania case with the Trustee's pending claims. Id. at 227, 352–54.

*The Distribution*

Both LWHC and FreeStream filed motions to distribute the Pennsylvania judgment, arguing that the funds were not property of GRHC's bankruptcy estate. Id. at 181–86, 335–43. On April 9, 2012, the Kansas federal district court granted

their motions.  See Rajala v. Gardner, No. 09-2482-EFM, 2012 WL 1189773 (D.

Kan. Apr. 9, 2012).  The court held that the bankruptcy estate does not include

fraudulently transferred property until recovered through a fraudulent transfer

suit.  Id. at *7.  The court also held that because the LRA provided for

FreeStream to be paid directly by Lookout, FreeStream's contingency fee could

never be considered part of the bankruptcy estate.  Id. at *5–6.

On April 12, the district court issued a clarifying nunc pro tunc order

directing the bankruptcy court to distribute the Pennsylvania judgment.  Aplt.

App. 398–99.  The Trustee followed with a motion to certify that order for

appellate review, Fed. R. Civ. P. 54(b), which the district court denied.  Id. at

402–13.  The court held that the Trustee's motion to certify the April 12 order

was procedurally improper.  Id. at 409.  The court also indicated it would decline

to grant any Rule 54(b) motion to certify its April 9 substantive order, reasoning

that the order was non-final as to the fraudulent transfer claims.  Id. at 409–13.

Discussion

A.    Does this Court Have Appellate Jurisdiction?

Contrary to the arguments of the various Defendants, the Kansas federal

district court did rule on the applicability of the automatic stay in granting the

motions to distribute.  Specifically, the court found that the Pennsylvania

judgment was not property of GRHC's estate and, therefore, not subject to the

automatic stay.  Thus, the district court's order, which deemed § 362 inapplicable

- 7 -

to the judgment proceeds, was essentially an order granting relief from the automatic stay. See Quigley Co., Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.), 676 F.3d 45, 51 (2d Cir. 2012) (holding that a decision on § 362's applicability is "the equivalent of a decision . . . on a motion seeking relief from a stay"); see also Eddleman v. U.S. Dep't of Labor, 923 F.2d 782, 785 (10th Cir. 1991), overruled in part on other grounds by Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson, 968 F.2d 1003, 1005 n.3 (10th Cir. 1992).

The grant or denial of relief from an automatic stay is generally an appealable final order. Franklin Sav. Ass'n v. Office of Thrift Supervision, 31 F.3d 1020, 1022 n.3 (10th Cir. 1994); see 3 Collier on Bankruptcy ¶ 362.13 (collecting cases). We have explained that an immediate appeal "is necessary to effectuate Congress' intent to settle these matters quickly." Eddleman, 923 F.2d at 785.

Defendants do not contest the general rule. Rather, they argue that 28 U.S.C. § 158(d) circumscribes our jurisdiction. Accordingly, we may only review a decision granting relief from a stay where the order is entered by a bankruptcy court and affirmed by a district court. But this view of our jurisdiction is too limited. When a district court exercises its jurisdiction and grants relief from an automatic stay, that decision is considered an "appealable final order" under 28 U.S.C. § 1291. See Franklin Sav. Ass'n, 31 F.3d at 1022 n.3; see also Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 864 n.4 (4th Cir. 2001); United States v.

Pelullo, 178 F.3d 196, 200–01 (3d Cir. 1999); Lentino v. Cage (In re Lentino), --- F.3d ----, 1999 WL 77140, at *1–2 (5th Cir. 1999) (summary calendar); Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax), 907 F.2d 1280, 1283 (2d Cir. 1990); Tringali v. Hathaway Mach. Co., Inc., 796 F.2d 553, 557–58 (1st Cir. 1986); Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble), 776 F.2d 802, 805 (9th Cir. 1985).[2]

We recognize that in Trinity Broad. Corp. v. Eller, we weighed in on one side of a circuit split in holding "that a judgment in a consolidated action that does not dispose of all claims shall not operate as a final, appealable judgment under 28 U.S.C. § 1291." 827 F.2d 673, 675 (10th Cir. 1987). However, this rule is necessarily more flexible in the bankruptcy context, where the concept of finality requires consideration of a particular adversary proceeding or a discrete controversy rather than the broader litigation. See Healthtrio, Inc., v. Centennial River Corp. (In re HealthTrio, Inc.), 653 F.3d 1154, 1159–60 (10th Cir. 2011); see also Keyesr v. Wasacht Towers Condo. Owners Ass'n, Inc., No. 12-4114, 2012 WL 5909210, at *2 (10th Cir. Nov. 27, 2012). For practical purposes, the finality of a decision granting or denying relief from an automatic stay is the

---

[2] Additionally, some courts and commentators have relied upon 28 U.S.C. § 1292(a)(1) as a basis for jurisdiction over orders denying or granting relief from § 362. See In re Nat'l Cattle Cong., Inc., 91 F.3d 1113, 1114 (8th Cir. 1996); see also Wright, Miller, & Cooper, Federal Practice & Procedure § 3926.1, at 290–91 (2012). But for purposes of this appeal, we need only consider § 1291 as the basis for our jurisdiction.

same whether the order is issued by a bankruptcy court or a district court.  See, e.g., Official Comm. of Unsecured Creditors v. Cajun Elec. Power Co-op, Inc., (In re Cajun Elec. Power Co-op., Inc.), 119 F.3d 349, 353–54 (5th Cir. 1997); Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1547–48 (11th Cir. 1996); In re Sonnax, 907 F.2d at 1283; United States v. Nicolet, Inc., 857 F.2d 202, 205 (3d Cir. 1988); see also 16 Wright, Miller, & Cooper, Federal Practice and Procedure § 3926.1, at 286–88 (2012).

Defendants seek to distinguish Franklin Sav. Ass'n.  They argue that unlike Franklin Sav. Ass'n, the underlying litigation in this case is ongoing.  This argument is unpersuasive.  First, the Trustee has not asserted any fraudulent transfer claims against FreeStream.  Second, the pending fraudulent transfer claims against LWHC do not preclude us from treating the district court's decision as a final, appealable order.

Simply put, the scope of the automatic stay constitutes a discrete dispute. See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 657 n.3 (2006) ("[O]rders in bankruptcy cases may be immediately appealed if they finally dispose of *discrete issues within the larger case . . . .*" (quotation omitted)).  The narrow legal issue presented on appeal does not depend on the merits of the underlying fraudulent transfer claims.  In fact, resolution of the fraudulent transfer claims would render the court's decision on the automatic stay "virtually unreviewable."  See Eddleman, 923 F.2d at 785.  Accordingly, we have

jurisdiction to review the district court's decision on this point of law.[3]

Defendants raise another challenge to our jurisdiction.  They argue the appeal is moot because we cannot grant the Trustee an effective remedy.  See Aplee. Br. (FreeStream) 17–18.  It is true that a lawsuit is moot where the court cannot possibly grant relief.  See Calderon v. Moore, 518 U.S. 149, 150 (1996) (per curiam).  But Defendants bear the heavy burden of proving there is no longer a live case.  See In re Paige, 584 F.3d 1327, 1336 (10th Cir. 2009); see also Cnty. of LRA v. Davis, 440 U.S. 625, 631 (1979).  And even "a partial remedy is sufficient to prevent a case from being moot."  Calderon, 518 U.S. at 150 (quotation omitted).

Here, the Trustee simply requests that we reverse the district court by holding that the $9 million is GRHC property and should be returned to the bankruptcy court pursuant to § 362(a)(3).  Aplt. Br. 52.  This is not a case where real property has been sold to a third party, or where reversal would require untangling a complex web of transactions.  See In re Arnold & Baker Farms, 85 F.3d 1415, 1419–20 (9th Cir. 1996) ("Fashioning effective judicial relief would hardly require putting Humpty Dumpty together again." (quotation omitted)).  Rather, the Trustee seeks to reimpose the stay on the amount disbursed.  See In re

---

[3] Though it appears the district court concluded that its April 9 order was not final, we disagree.  As the Court has stated, "Rule 54(b) . . . . does not supersede any statute controlling appellate jurisdiction."  Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 438 (1956).

- 11 -

C.W. Mining Co., 641 F.3d 1235, 1239 (10th Cir. 2011) (case not moot where monetary relief was possible); Raymark Indus., Inc. v. Lai, 973 F.2d 1125, 1129 (3d Cir. 1992); see also Am. Atheists, Inc., v. Detroit Downtown Dev. Auth., 567 F.3d 278, 287–88 (6th Cir. 2009); Burbank Anti-Noise Grp. v. Goldschmidt, 623 F.2d 115, 116 (9th Cir. 1980).

We recognize the possibility that various Defendants have dissipated all or part of the funds. But money is fungible and we have no reason to think that $9 million could not be returned. Further, the Trustee is not required to demonstrate that he will obtain complete relief; it is likely that some measure of effective relief could be fashioned, hence, the case is not moot. See In re Paige, 584 F.3d at 1336–37.

B.     Does Freestream's 25% Contingency Fee Constitute Property of the Bankruptcy Estate Under § 541?

Whether the contingency fee constitutes property of the estate is a question of law reviewed de novo. In re Cranmer, 697 F.3d 1314, 1316 (10th Cir. 2012). The district court concluded that FreeStream's contingency fee could "never be" property of the estate. The court based its decision on the LRA, which required Lookout to pay "25% of the Final Installment to FreeStream [], as full satisfaction of all amount that may be due . . . from Lookout, Developer Member and/or Investor Member." According to the district court, it is "clear that FreeStream's portion [came] directly from Lookout" and did "not pass through the Developer Member." Rajala, 2012 WL 1189773, at *5.

- 12 -

The Trustee argues that the district court focused on the physical path of the funds, rather than the legal path required by the documents. Aplt. Br. 29–31. He argues that the purchase price is based upon the value of the projects, and any money FreeStream received is part of the purchase price, as allocated by the Developer Member. Id. at 30. Merely because the ultimate amount is based upon the value of the project or is part of the purchase price does not allow us to disregard the language of the agreements or the Pennsylvania judgment. Aplt. App. 197–98.

The district court was correct—the plain language of the LRA clearly required FreeStream's payment to come directly from Lookout (owned by Edison). Further, as both the Pennsylvania and Kansas courts found, FreeStream was the intended third-party beneficiary of the LRA As such, FreeStream had a right to enforce the LRA, and FreeStream had its own right to payment. See John Julian Const. Co. v. Monarch Builders, Inc., 306 A.2d 29, 34 (Del. Super. Ct. 1973) (The LRA provided that it was to be governed by Delaware law.). Therefore, the district court correctly held that FreeStream's fee could not be considered property of GRHC's bankruptcy estate.

C.   Does an Automatic Stay Apply to Unrecovered Property that Is the Subject of a Fraudulent Transfer Claim?

The underlying issue we must decide is whether a bankruptcy estate includes fraudulently transferred property that the Trustee has not yet recovered. Because the appeal presents a question of statutory interpretation, our review is

de novo.  In re HealthTrio, 653 F.3d at 1161.

      1.     The Split

Under 11 U.S.C. § 362(a)(3), the filing of a Chapter 7 bankruptcy petition automatically stays "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate."  Section 541(a)(1) defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case," and § 541(a)(3) also includes in the estate "[a]ny interest in property that the trustee recovers under section . . . 550."  Under § 550, a trustee may recover transferred property, "to the extent that a transfer is avoided under section . . . 548."  In turn, § 548 enables the trustee to avoid fraudulent transfers.

The Fifth Circuit has held that fraudulently transferred property belongs to the estate under § 541(a)(1), and is therefore subject to § 362's stay even before it is recovered.  Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266 (5th Cir. 1983).  The court explained that "it makes the most sense to consider the debtor as continuing to have a 'legal or equitable interest' in the property fraudulently transferred."  Id. at 1275; see also Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.), 178 B.R. 753, 764 (Bankr. C.D. Ill. 1995) ("The transferee merely h[olds] voidable title . . . .").  Thus, even before fraudulently transferred property comes into the estate by operation of § 541(a)(3), the property is considered part of the estate under

§ 541(a)(1).

In contrast, the Second Circuit rejected In re MortgageAmerica's analysis in favor of a narrower reading.[4] See Fed. Deposit Ins. Corp. v. Hirsh (In re Colonial Realty Co.), 980 F.2d 125 (2d Cir. 1992). The court held that § 541(a)(3), rather than § 541(a)(1), governs § 362's stay as applied to fraudulently transferred property. Therefore, such property does not become part of the estate *until it is recovered*. Id. at 131. In other words, pursuant to § 541(a)(3), the automatic stay does not apply to fraudulently transferred property until the transfer is avoided under § 548, and the property is recovered under § 550.

2.      Which Interpretation?

In general, "[t]he plain meaning of [a statute] should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989). Here, although § 541 is very broad, see Parks v. Dittmar (In re Dittmar), 618 F.3d 1199, 1207–10 (10th Cir. 2010), it

---

[4] Outside the Fifth and Second Circuits, courts are divided between the two approaches. The Trustee cites N.L.R.B. v. Martin Arsham Sewing Co., 873 F.2d 884 (6th Cir. 1989), as adopting the In re MortgageAmerica rationale. There, the Sixth Circuit concluded that "property fraudulently conveyed and recoverable under [the Code] remains property of the estate and, if recovered, should be subject to equitable distribution under the Code." Id. at 887. But as Defendants note, courts within the Sixth Circuit have interpreted Arsham differently. Compare Teleservices Grp., Inc. v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.), 463 B.R. 28, 34 n.18 (Bankr. W.D. Mich. 2012), with In re Cincom iOutsource, Inc., 398 B.R. 223, 235 (Bankr. S.D. Ohio 2008).

plainly does not include fraudulently transferred property until that property is recovered. Therefore, because the statute's plain meaning is not demonstrably at odds with Congress's intent, it should control.

Section 541(a)(1) defines the bankruptcy estate as including "all legal or equitable interests" the debtor holds "as of the commencement of the case." The Trustee alleges that GRHC's insiders fraudulently transferred the Lookout purchase price to Defendants. Accordingly, the Trustee urges us to adopt the In re MortgageAmerica rationale, under which the Debtor retains an "equitable interest" in fraudulently transferred property. See 714 F.2d at 1275; Aplt. Br. 41–44.

An equitable interest is "[a]n interest held by virtue of an equitable title or claimed on equitable grounds, such as the interest held by a trust beneficiary." Black's Law Dictionary (9th ed. 2009). "Equitable title" is defined as "a beneficial interest in property [which] gives the holder the right to acquire formal legal title." Id. Reading "equitable title" to include any property a trustee merely alleges to have been fraudulently transferred would violate the concept of equity. See Michael R. Cedillos, Note, Categorizing Categories: Property of the Estate and Fraudulent Transfers in Bankruptcy, 106 Mich. L. Rev. 1405, 1416–17 (2008). "[O]ne of the fundamental principles [of] equity jurisprudence is . . . that before a complainant can have [] standing in court he must first show that . . . [he has] a good and meritorious cause of action . . . ." Keystone Driller Co. v. Gen.

Excavator Co., 290 U.S. 240, 244 (1933). It follows that a mere allegation, without any showing of merit, cannot create "equitable title."

Further, "[i]t is a cardinal principle of statutory construction that . . . if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001). Here, § 541(a)(3) provides that the estate includes "[a]ny interest in property that the trustee recovers" pursuant to his avoidance powers. As the Second Circuit explained, interpreting § 541(a)(1) to include fraudulently transferred property would render § 541(a)(3) meaningless with respect to property recovered in a fraudulent transfer action. In re Colonial, 980 F.2d at 131.

In response, the Trustee argues that § 541(a)(3) is "a belt and suspenders," designed to ensure that assets will be available to satisfy creditor interests. See Aplt. Br. 35. The Trustee argues that inclusion of such property acts as a deterrent to fraudulent transfers and furthers the bankruptcy objectives of asset preservation and equitable distribution. However, there are already several mechanisms for safeguarding debtor assets. Even before property is recovered and brought into the estate under § 541(a)(3), a trustee may seek a preliminary injunction or temporary restraining order pending resolution of a fraudulent transfer claim.[5] See Fed. R. Civ. P. 65; Fed. R. Bankr. P. 7065. In other words,

---

[5] In fact, the Trustee attempted to use Rule 65 by filing a motion for a temporary restraining order or preliminary injunction. See Aplt. App. 414–15. However, the district court denied the motion based on the Trustee's failure to show a likelihood of success on the merits, and the court's conclusion that a

- 17 -

we are wary of expanding § 541(a)(1) beyond its plain meaning on policy grounds where other avenues of asset preservation are readily available.

Moreover, this is not one of the "rare cases" where the plain meaning of the statute leads to an absurd result. Both sides present plausible arguments regarding Congress's intent. Compare In re MortgageAmerica 714 F.2d at 1275 (citing H.R. Rep. No. 595 (1978)), with In re Colonial, 980 F.2d at 131 (citing structure of statute as evidence of legislative intent). Therefore, the plain meaning of the statutory language should control.

Finally, we are mindful that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the [courts should] construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs, 531 U.S. 159, 173 (2001) (quotation omitted). Although neither party addressed the issue, we note that a broad reading could potentially violate the Due Process Clause by allowing a trustee to enjoin another party's property rights based only on the allegation of fraud. See Connecticut v. Doehr, 501 U.S. 1, 10 (1991).

Both parties agree that fraudulent transfer claims are included in the bankruptcy estate. But according to the Trustee, § 541(a)(1) also includes property that is the subject of a fraudulent transfer claim—even if the property

---

preliminary injunction would be adverse to the public interest. See id. at 417–21. Notably, the Trustee did not appeal.

has been sold to a bona fide purchaser.  See Oral Argument (12:15).  This reading of the statute is particularly troublesome given that § 362's stay is automatic. Mere filing of a fraudulent transfer claim could deprive a bona fide purchaser of his property without judicial supervision, a finding of probable cause, the posting of a bond, or a showing of exigent circumstances—let alone a pre-deprivation opportunity to be heard.  See N. Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 607 (1975); see also Doehr, 501 U.S. at 10, 17–18.  Therefore, because "we assume that Congress legislates with constitutional limitations in mind," see U.S. W., Inc., v. F.C.C., 182 F.3d 1224, 1231 (10th Cir. 1999), we would be reluctant to adopt the Trustee's sweeping interpretation of the statute.

In the end, we need not pass upon the constitutionality of such a broad reading.  Instead, we adopt the statute's plain meaning and hold that fraudulently transferred property is not part of the bankruptcy estate *until recovered*.  This interpretation gives Congress's chosen language its ordinary meaning, and abides by the rule against surplusage.  Further, our reading does not undermine the Bankruptcy Code's goal of equitable distribution, as there exist alternative means of protecting estate assets.

AFFIRMED.  All pending motions are denied.