**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 13-3543

———

In re:  DANIEL W. ALLEN, SR.,
Debtor


ADVANCED TELECOMMUNICATION NETWORK,
INC.,
Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D. N.J. 1-12-cv-03793)
District Judge:  Honorable Renee M. Bumb

———

Argued on April, 7, 2014
Before:  FISHER, SCIRICA and COWEN, *Circuit Judges*.

(Opinion Filed:  September 26, 2014)

Jason H. Baruch, Esq.  **ARGUED**
Trenam Kemker
101 East Kennedy Boulevard
Suite 2700
Tampa, FL 33601-0000

Michael A. Katz, Esq.
Pfaltz & Woller
382 Springfield Avenue
The Bassett Building
Summit, NJ 07901

Edward L. Paul, Esq.
Sklar & Paul
701 White Horse Road
Adams Place, Suite 5
Voorhees, NJ 08043
          *Counsel for Appellant*


Daniel W. Allen, Sr.  **ARGUED**
18 East Aberdeen Road
Ocean City, NJ 08226
          *Pro Se Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Although the facts of this case include details of money transfers and offshore asset protection trusts in sunny South Pacific locales, its ultimate resolution involves nothing more exotic than the interpretation of the Bankruptcy Code. We consider the Code's provisions defining the property of a bankruptcy estate and determine what is required for a trustee to "recover" that property for the benefit of the estate, as provided in 11 U.S.C. § 550. The property at issue here is $6 million that was fraudulently transferred by Appellant Advanced Telecommunication Network ("ATN") to two of its former owners, including Appellee Daniel W. Allen, Sr. ("Allen"), as part of a shareholder litigation settlement in 1999. ATN avoided that transfer and obtained a recovery order in its separate bankruptcy proceedings in the United States Bankruptcy Court for the Middle District of Florida (the "Florida Bankruptcy Court"). Allen subsequently filed the present bankruptcy case in the District of New Jersey, and argues that the funds were never recovered and are therefore property of his estate subject to the Code's automatic stay provision. We conclude that the District Court applied too narrow a definition of "recover" and hold that where a debtor (like ATN) avoids a fraudulent transfer and obtains a recovery order, it has sufficiently "recovered" those funds such that they are a part of that debtor's estate under the

Code. Accordingly, we will reverse and remand this case to the District Court.

I.

In 1989, Allen and Gary Carpenter ("Carpenter") founded ATN, a company engaged in reselling long distance telephone service. Allen and Carpenter each owned 50% of the voting stock in ATN, while Allen's brother David Allen and Carpenter's father Robert Carpenter owned the remaining non-voting stock. Allen and Carpenter had a falling out in the spring of 1996, and Carpenter ultimately terminated Allen's employment with ATN on August 14, 1996.

A. The Allen-Carpenter shareholder litigation

Allen sued Carpenter and ATN in New Jersey state court in April 1996, asserting several claims pertaining to the management of ATN. During trial, Daniel and David Allen (the "Allens") and Carpenter (along with their respective attorneys) entered into a handwritten settlement agreement that relieved Carpenter of any liability to the Allens in exchange for, *inter alia*, a $1.25 million payment to the Allens' attorneys, a $6.25 million payment to the Allens in two installments ($250,000 and $6 million), and a stipulation of dismissal with prejudice upon execution. A formal written agreement outlining substantially the same terms was signed on January 12, 1999, and the $6 million transfer (at issue in the present case) was made on June 1, 1999.[1]

---

[1] In 1995, ATN also became involved in a contract dispute with a competitor, WATS/800, Inc. We need not discuss that litigation at length, except to note that Carpenter relinquished control of ATN to two companies controlled by WATS president Damian Freeman as part of settling that case. Freeman remains in control of ATN.

4

**B.      The ATN bankruptcy**

On January 10, 2003, ATN filed for Chapter 11 bankruptcy protection in the Florida Bankruptcy Court.  ATN also filed an adversary proceeding against the Allens on April 28, 2003, seeking, *inter alia*, to avoid the $6 million transfer pursuant to §§ 544 and 550[2] of the Bankruptcy Code, as well as the New Jersey Uniform Fraudulent Transfer Act (the "New Jersey UFTA"), N.J. Stat. Ann. § 25:2-20 *et seq*.  The adversary complaint alleged that the $6 million payment to the Allens on June 1, 1999, was fraudulent insofar as ATN did not receive reasonably equivalent value in exchange.

After commencing the adversary proceeding in the Florida Bankruptcy Court, ATN sought a preliminary injunction to freeze the funds at issue.  The Allens moved for a continuance, which the court granted.  In the interim, the Allens took the following actions:  "Daniel Allen transferred the the [sic] Assets under his control to a Cook Islands self-settled asset protection trust known as the Shingle Oak Family Trust . . . and . . . David Allen . . . transferred approximately $150,000 to a Cook Islands self settled [sic] asset protection trust known as the Southern Breeze Trust."  App. at 124.  The Florida Bankruptcy Court found that, as a result of these actions, "[g]ood cause exists to believe that

---

[2] Section 544 of the Bankruptcy Code allows a trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . . ."  11 U.S.C. § 544(b)(1).  Section 550 provides:  "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer."  11 U.S.C. § 550(a).

Defendants acted in bad faith in twice requesting a continuance of the Preliminary Injunction Hearing," thus allowing them time to transfer the money to the Cook Islands trusts. App. at 129. The court granted preliminary injunctive relief and ordered that the funds be repatriated. When the Allens failed to comply with the court order, the Florida Bankruptcy Court twice held Daniel Allen in contempt of court.

When the case proceeded to trial, the Allens prevailed. The Florida Bankruptcy Court found that ATN's claim was barred by the applicable statute of limitations and that its fraudulent transfer claims failed on the merits under the New Jersey UFTA. The Court of Appeals for the Eleventh Circuit reversed. *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325 (11th Cir. 2007). The Eleventh Circuit held that ATN had proved a fraudulent transfer under the New Jersey UFTA insofar as: (1) it was insolvent at the time of the $6 million transfer; and (2) it received no reasonably equivalent value for the transfer. *Id.* at 1332-38. On remand, the Florida Bankruptcy Court avoided the transfers to the Allens and entered a $6 million judgment on January 15, 2010, in favor of ATN on its fraudulent transfer claims. ATN then sought to collect on its judgment pursuant to Federal Rule of Bankruptcy Procedure 7069. In response, the Florida Bankruptcy Court entered an order directing Daniel Allen: "(i) to repatriate all monies currently held in his Shingle Oak Trust to counsel for ATN within 30 days of the entry of [the] order, (ii) to provide an accounting of all monies deposited in and transferred from the Shingle Oak Trust within 60 days of the entry of [the] order, and (iii) to otherwise immediately freeze any other use or transfer of any monies in the Shingle Oak Trust." App. at 208. When Allen failed to comply with the second

6

repatriation order, ATN brought a motion to hold Allen in contempt on August 30, 2011. No action was taken on that motion because on September 21, 2011, Allen filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

## C.    Proceedings in the present case

ATN filed the instant adversary proceeding in the Bankruptcy Court shortly after Allen filed his Chapter 7 petition. ATN sought an order "determining that the ATN/Allen Litigation [in the Florida Bankruptcy Court] was not stayed pursuant to [Allen's] bankruptcy filing because ATN was seeking to collect its own estate assets and not those of [Allen];" or, in the alternative, "granting ATN relief from the automatic stay to continue with the ATN/Allen Litigation and collection of the Judgment and waiving the 14 day stay of effectiveness of order." App. at 288. ATN maintains that the funds at issue should not be subject to the automatic stay[3] in Allen's bankruptcy case pursuant to §

---

[3] The automatic stay provisions of the Bankruptcy Code provide that:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

7

362(d) of the Code, which allows a court to grant relief from the stay "for cause."  11 U.S.C. § 362(d)(1).

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . .

11 U.S.C. § 362.

Following a hearing, the Bankruptcy Court denied ATN's motions by concluding that: (1) any property in the Cook Islands trusts was not property of ATN's bankruptcy estate pursuant to 11 U.S.C. § 541,[4] but was instead property of Allen's estate and thus subject to the automatic stay upon Allen's bankruptcy filing; and (2) the funds were not held by Allen in constructive trust for the benefit of ATN under New Jersey law. As is relevant here, the Bankruptcy Court concluded that the funds did not fit within the Bankruptcy Code's definition of "property of the estate" because ATN—despite having avoided the transfer—did not actually recover tangible possession of the funds under § 550. Absent actual tangible recovery, Allen had a superior interest in the funds, which were thus the property of his estate (not ATN's) and subject to the automatic stay. The Bankruptcy Court entered its opinion on March 2, 2012, and ATN appealed.

On July 19, 2013, the District Court affirmed for essentially the same reasons. It also rejected ATN's argument that the New Jersey Bankruptcy and District Courts (the "New Jersey Federal Courts") lacked jurisdiction to hear the adversary proceeding. ATN filed a timely notice of appeal to this Court on August 19, 2013. On October 11, 2013, the Bankruptcy Court entered an order discharging Allen's debts pursuant to 11 U.S.C. § 727.

---

[4] Section 541 of the Bankruptcy Code provides, in relevant part, that "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: . . . (3) Any interest in property that the trustee recovers under section . . . 550 . . . of this title." 11 U.S.C. § 541(a).

9

## II.

The District Court had jurisdiction to hear the appeal below pursuant to 28 U.S.C. § 158(a), and we have jurisdiction pursuant to 28 U.S.C. § 158(d). "Our review of the District Court's decision effectively amounts to review of the bankruptcy court's opinion in the first instance." *In re Hechinger Inv. Co. of Del.*, 298 F.3d 219, 224 (3d Cir. 2002). Because this issue involves interpretation of the Bankruptcy Code, it is a question of law subject to plenary review. *Id.*

## III.

We address two issues in this appeal. First, we consider whether the New Jersey Federal Courts had subject matter jurisdiction over ATN's adversary proceeding. Second, we consider whether the $6 million payment was a part of ATN's bankruptcy estate in Florida such that it was not affected by the automatic stay provisions triggered by Allen's bankruptcy proceedings in the present case. We consider each issue below.

### A.    Subject matter jurisdiction

ATN argues that the New Jersey Federal Courts lacked jurisdiction under the doctrine set forth in *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456 (1939), on the ground that the New Jersey Federal Courts' decisions could conflict with the Florida courts' disposition of the funds in the offshore trust. The District Court concluded that it had jurisdiction because the judgment in the Florida case was *in personam*, and therefore the New Jersey Federal Courts were not required to exercise control over property already under the control of the Florida courts. We agree. "We exercise plenary review in determining whether the district court was vested with subject matter jurisdiction." *Brown v. Francis*, 75 F.3d 860, 864 (3d Cir. 1996).

10

The *Princess Lida* doctrine "prevents a court in which an action is filed from exercising jurisdiction when a court in a previously filed action is exercising control over the property at issue and the second court must exercise control over the same property in order to grant the relief sought." *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 175 (3d Cir. 1993). As discussed by the Supreme Court:

> . . . [T]he principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized . . . but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.

*Princess Lida*, 305 U.S. at 466. The *Princess Lida* doctrine "applies when: (1) the litigation in both the first and second fora are *in rem* or *quasi in rem* in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court." *Dailey*, 987 F.2d at 176 (citing *Princess Lida*, 305 U.S. at 466). Because the test is elucidated in the conjunctive, we need only discuss the first element to reject ATN's jurisdictional argument.

11

The crux of the jurisdictional question in this case is whether the Florida Bankruptcy Court exercised *in rem* jurisdiction over the trust funds or *in personam* jurisdiction over Allen. Although "[b]ankruptcy jurisdiction, at its core, is *in rem*," *Central Virginia Community College v. Katz*, 546 U.S. 356, 362 (2006), "[t]he Framers would have understood that laws on the subject of [b]ankruptcies included laws providing, in certain limited respects, for more than simple adjudications of rights in the res," *id.* at 370 (internal quotation marks omitted). Historically, this additional judicial authority included the power to imprison third parties who possessed the bankruptcy estate's assets and the power to grant *in personam* writs of habeas corpus ordering the release of individuals from debtors' prison. *Id.* at 370-71. Apropos of the present case, the *Katz* Court also recognized that "the trustee, in order to marshal the entirety of the debtor's estate, will need to recover the subject of the transfer pursuant to § 550(a). A court order mandating turnover of the property, although ancillary to and in furtherance of the court's *in rem* jurisdiction, might itself involve *in personam* process." *Id.* at 371-72. Thus the Supreme Court drew a distinction between the bankruptcy proceedings themselves (which are *in rem*) and ancillary orders entered in the course of those proceedings—including those pursuant to § 550—which may be *in personam*.

In *United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992), the Supreme Court addressed a postpetition transfer of property that had been avoided pursuant to 11 U.S.C. § 549(a), recovered pursuant to § 550(a), and reduced to a monetary judgment. *Id.* at 31. In dictum, the Court rejected an argument based upon *in rem* jurisdiction: "As an initial matter, the premise for [the argument based upon *in rem* jurisdiction] is missing here, since respondent did not invoke,

and the Bankruptcy Court did not purport to exercise, *in rem* jurisdiction. Respondent sought to recover a sum of money, not 'particular dollars,' . . . so there was no *res* to which the court's *in rem* jurisdiction could have attached." *Id.* at 38 (citations omitted).

The statements in *Katz* and *Nordic Village* demonstrate that the judgment rendered by the Florida Bankruptcy Court was not directed at particular property. *Cf. Black's Law Dictionary* 700 (8th ed. 2005) (defining "judgment in rem" as "[a] judgment that determines the status or condition of property and that operates *directly on the property itself*." (emphasis added)). The Florida Bankruptcy Court explicitly entered the judgment at issue here against individuals by stating that "[j]udgment is entered . . . against the defendants, Daniel W. Allen and David D. Allen . . . in the amount of $6,000,000." App. 194. This order, which granted relief pursuant to Bankruptcy Code sections 544 (avoidance) and 550 (recovery),[5] falls into that area identified in *Katz*—a court's ancillary power to utilize "*in personam* process" in order to effectuate its *in rem* bankruptcy jurisdiction. *Katz*, 546 U.S. at 372. Like in *Nordic Village*, the recovery order was aimed at recovering "a sum of money, not 'particular dollars,'" therefore taking the order outside the Florida Bankruptcy Court's *in rem* jurisdiction. *See* 503 U.S. at 38.

---

[5] While the judgment order did not explicitly refer to those two sections, it granted relief on "Counts 2 and 6 asserted in the Amended Complaint." App. at 194. Both of those counts explicitly sought relief pursuant to Code sections 544 and 550.

13

ATN argues that the repatriation order exercised *in rem* jurisdiction over the trust funds in particular.[6] This argument disregards the underlying judgment, however, and looks solely to an ancillary order entered in aid of execution. The repatriation order was entered pursuant to Federal Rule of Bankruptcy Procedure 7069, which applies Federal Rule of Civil Procedure 69 to adversary proceedings. Fed. R. Bankr. P. 7069. Rule 69 in turn provides the procedure for executing on a judgment by way of proceedings ancillary to the court's primary basis for jurisdiction. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 311 (3d Cir. 2006) (noting that a garnishment action pursuant to Rule 69 fell under a court's ancillary jurisdiction). Thus, the repatriation orders were ancillary to the exercise of the court's *in personam* jurisdiction, not an exercise of new *in rem* or *quasi in rem* jurisdiction. The Florida Bankruptcy Court judgment was, therefore, an *in personam* judgment against Allen, not the funds themselves. Absent a showing that *both* the Florida Bankruptcy Court and the New Jersey Federal Courts exercised such control, ATN fails to meet the first prong of the *Princess Lida* test. We thus conclude that we have jurisdiction to consider the merits of ATN's appeal.

**B.     Property of the estate**

The New Jersey Federal Courts found that the fraudulently transferred funds were not property of ATN's bankruptcy estate in the Florida litigation under § 541

---

[6] It is unclear what ATN hopes to gain by challenging the New Jersey Federal Courts' jurisdiction, because a successful challenge would presumably leave it with limited means to collect on its judgment. Because we conclude that jurisdiction exists, however, we need not delve further into ATN's choice of strategy at this time.

because they were never "recovered" by ATN pursuant to § 550. We reject this analysis because it failed to address the central issue in this case—what it means to "recover" property (or the value of such property) for the benefit of the estate. With respect to that issue, the New Jersey Federal Courts applied too restrictive a definition of "recover"—a definition that required ATN to recover actual tangible possession of the funds before considering them part of its estate. That definition does not comport with the provisions of the Bankruptcy Code, as we discuss below.

### 1. Circuit split

The New Jersey Federal Courts identified a split between the Fifth Circuit and the Second and Tenth Circuits in addressing whether "recovery" of funds is required before they can be considered property of a bankruptcy estate. *Compare Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266 (5th Cir. 1983), *with FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992), *and Rajala v. Gardner*, 709 F.3d 1031 (10th Cir. 2013). The courts in both *MortgageAmerica* and *Colonial Realty* interpreted § 541(a)(1), which defines property of the estate as all property, "wherever located and by whomever held," including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

*MortgageAmerica* addressed whether property fraudulently transferred by a debtor remains the property of the debtor's estate under § 541(a)(1) even though that property remains in the hands of third parties. 714 F.2d at 1275. The Fifth Circuit held that it does, noting that "[p]roperty fraudulently conveyed and recoverable under the Texas Fraudulent Transfers Act remains, despite the

15

purported transfer, property of the estate within the meaning of section . . . 541(a)(1) of the new Code." *Id.* at 1277. The court noted that the debtor in such situations retains a "'legal or equitable interest[]'" in the fraudulently transferred property. *Id.* at 1275 (citing 4A *Collier on Bankruptcy*, ¶ 70.14[1] (14th ed. 1978)). Importantly, the court focused on the broad language in § 541(a)(1), and declined to decide "whether the phrase '[a]ny interest in property that the trustee recovers' may be read '*might* recover' at some time in the future." *MortgageAmerica*, 714 F.2d at 1273 n.7.

The Second Circuit in *Colonial Realty* disagreed and concluded that the Fifth Circuit's reading of § 541(a)(1) in *MortgageAmerica* essentially rendered § 541(a)(3) meaningless. *Colonial Realty*, 980 F.2d at 131. The *Colonial Realty* court noted:

> "If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions." . . . Further, "the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered."

16

*Id.* (quoting *In re Saunders*, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989)). In a more recent decision addressing the split between the Second and Fifth Circuits, the Tenth Circuit concluded that the Second Circuit's holding in *Colonial Realty* was correct, because otherwise "a mere allegation [of a fraudulent transfer] without any showing of merit" could bring property into the estate. *Rajala v. Gardner*, 709 F.3d 1031, 1038 (10th Cir. 2013). The New Jersey Federal Courts in this case also agreed with the Second Circuit's approach in *Colonial Realty* and concluded that, absent actual recovery of the fraudulently transferred funds, those funds are not considered "property of the estate" under § 541.

### 2.   *Recovering the fraudulently transferred funds*

The problem that arises from the New Jersey Federal Courts' reliance on *Colonial Realty* is that neither the Second, Fifth, nor Tenth Circuit decisions addressed the crucial question in this case—what it means to "recover" fraudulently transferred property for purposes of § 541(a)(3). Instead, the courts in *Colonial Realty*, *MortgageAmerica*, and *Rajala* looked to whether funds remained property of the debtor's estate under § 541(a)(1) *absent the recovery provision* in § 541(a)(3). Because this case involves a recovery insofar as the Florida Bankruptcy Court entered a recovery order pursuant to § 550, the rationale set forth by the Second Circuit and adopted by the New Jersey Bankruptcy Court is not helpful. This is particularly true here where the only impediment to actual tangible recovery was Allen's own conduct.

Rather than simply interpreting the plain language of § 541(a)(3), the Bankruptcy Court introduced the phrase "actually recovered" to ostensibly require actual tangible possession of the fraudulently transferred funds before they

17

could be considered a part of ATN's estate. The New Jersey Federal Courts identified no decision, however, that includes such language, and in fact many of the decisions they cited specified that no recovery action had been taken at all.[7] We reject the New Jersey Federal Courts' strained interpretation of § 541(a)(3) for two reasons: first, the facts of this case support a finding that ATN did, in fact, recover the funds at issue; and second, the New Jersey Federal Courts' interpretation would render § 541 internally inconsistent.

First, with respect to whether the funds were recovered, ATN has, in a legal sense, recovered the funds for its estate by securing a § 550 recovery order. The Eleventh

---

[7] *See, e.g.*, *Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 71 (Bankr. D. Idaho 2008) (acknowledging that "[t]his is not a case where Trustee avoided a transfer and established a § 550 recovery . . ."); *Moyer v. ABN Amro Mortg. Grp., Inc. (In re Feringa)*, 376 B.R. 614, 625 n.10 (Bankr. W.D. Mich. 2007) (noting that "it is difficult to read Section 541(a)(1) so broadly as to include *potential recoveries* of fraudulent conveyances, especially in light of subparagraph[] (a)(3) . . ." (emphasis added)); *Wagner v. Christiana Bank & Trust Co. (In re Wagner)*, 353 B.R. 106, 112-13 (Bankr. W.D. Pa. 2006) (where a Chapter 7 trustee took no action to avoid an allegedly fraudulent transfer, the court noted that "for a claim to become 'property of the estate' a trustee must actually exercise her avoiding powers and make a tangible recovery of the property before it can be transformed into 'property of the estate' as envisioned by Section 541(a)(3)"); *Grossman v. Murray (In re Murray)*, 214 B.R. 271, 279 (Bankr. D. Mass. 1997) (finding the reasoning in *Saunders* to be "particularly compelling where, as here, no affirmative action had been taken to recover the funds at the relevant time").

Circuit and the Florida Bankruptcy Court on remand both concluded that the transfer at issue here was fraudulent under the New Jersey UFTA.[8] The Florida Bankruptcy Court then entered a judgment in favor of ATN and granted recovery relief pursuant to § 550. All that now stands between ATN and actual possession of the funds is Allen's dilatory conduct. Contrary to the holdings below, none of the decisions cited by the New Jersey Federal Courts required a debtor to recover actual tangible possession of the funds at issue in order to make those funds part of the debtor's estate under § 541(a)(3). We will not impose such a high hurdle, particularly where doing so would allow Allen to continue avoiding the judgment against him.

Second, the New Jersey Federal Courts' interpretation of "recovers" renders § 541 internally inconsistent. Subsection (a) provides that the estate includes property "wherever located and by whomever held." 11 U.S.C. § 541(a). If "recovers" is interpreted as requiring actual possession, it would render the "wherever located and by whomever held" language superfluous, since actual

_____

[8] We note that the New Jersey Federal Courts did not appear to doubt that a fraudulent transfer took place. *See* App. at 11 (District Court noted: "Here, while the Florida Court found the transfer of money in 1999 was an avoidable fraudulent transfer and issued a recovery order pursuant to § 550 . . ."); App. at 302 (Bankruptcy Court noted: "While it is true that the Bankruptcy Court for the Middle District of Florida, on remand, found that the transfers were avoidable under both New Jersey Statutes 25:2-25(b)(2) and 25:2-27(a) . . ."). Because the fraudulent transfer issue was fully litigated in the Florida courts and is not challenged on appeal, we defer to the Florida courts' determination on that issue.

possession would mean that no one but the trustee could ever possess estate property. Courts should avoid interpretations of statutory language that render other portions of the statute superfluous. *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). We therefore reject the New Jersey Federal Courts' interpretation because it would render subsection (a) and subsection (a)(3) inconsistent—an untenable result.

In reaching our conclusion, we also reject two arguments Allen raises for the first time in his *pro se* brief. First, he argues that ATN's appeal was rendered moot by the Bankruptcy Court's entry of a bankruptcy discharge order in this case on October 11, 2013. Second, he argues that he has satisfied "both items that were at issue with the Florida Bankruptcy Court that were the subject of contempt proceedings." Appellee's Br. at 4. Neither argument is yet ripe for our review.

The discharge order does not render ATN's claims moot at this point. Section 727 of the Bankruptcy Code provides for a discharge under certain circumstances, but it also provides a window of opportunity for creditors, among others, to request a revocation of such discharge within one year of the order (under certain circumstances) or before the close of the case (in others). 11 U.S.C. § 727(e).[9] Thus, to

--------------------------

[9] Section 727(e) provides in full:

The trustee, a creditor, or the United States trustee may request a revocation of a discharge—
> (1) under subsection (d)(1) of this section within one year after such discharge is granted; or

20

the extent that ATN could seek to revoke Allen's discharge at least before October 11, 2014, the discharge itself does not render ATN's arguments moot.

With respect to Allen's argument that he has satisfied "both items that were at issue with the Florida Bankruptcy Court," and that "Judge Burns would not have granted a Discharge had Appellee not performed [the two items referenced above] fully, completely and to her satisfaction," the New Jersey Federal Courts were never given an opportunity to pass on them. Appellee's Br. at 4. Moreover, the Bankruptcy Court's discharge order provides no basis for the court's decision, and makes no reference to any requirements having been satisfied. *See* Order Discharging Debtor, Case No. 11-37671, Docket Entry No. 109 at 1 (Bankr. D.N.J. Oct. 11, 2013) (providing only that "[i]t appearing that the debtor is entitled to a discharge . . . The debtor is granted a discharge under section 727 of title 11, United States Code."). Because remand is necessary in this case, Allen may seek to develop a further factual record and make those arguments at that time, but we will not consider his arguments for the first time on this appeal.

In light of these considerations, we conclude that the New Jersey Federal Courts erred in interpreting "recover" as requiring actual possession of the funds at issue. By contrast, ATN obtained a § 550 recovery order, thus bringing the funds within its estate in the Florida proceedings. The mere fact

---

(2) under subsection (d)(2) or (d)(3) of this section before the later of—
    (A) one year after the granting of such discharge; and
    (B) the date the case is closed.
11 U.S.C. § 727(e).

21

that Allen's dilatory conduct has foiled ATN's past attempts to recover actual possession of the funds does not preclude a finding that the funds are properly part of ATN's estate and, accordingly, not subject to the automatic stay. Because we find it necessary to reverse and remand on this ground, we need not address ATN's alternative argument that Allen holds the funds in constructive trust under New Jersey law.

## IV.

For the foregoing reasons, we will REVERSE the judgment of the District Court and REMAND for further proceedings consistent with this opinion.